1  MICHAEL J. AGOGLIA (CA SBN 154810)
   MAgoglia@mofo.com
2  WENDY M. GARBERS (CA SBN 213208)
   WGarbers@mofo.com
3  MORRISON & FOERSTER LLP
   425 Market Street
4  San Francisco, California 94105-2482
   Telephone: 415.268.7000
5  Facsimile: 415.268.7522

6  Attorneys for Defendants JPMORGAN CHASE
   BANK, N.A., and CHASE HOME FINANCE, LLC
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    WESTERN DIVISION

11                                    CV09-9442 AHM (FFMx)

12  BARBARA L. SCHRAMM, an individual,    Case No.
    and
13  STEVEN L. WEINSTEIN, an individual,   NOTICE OF REMOVAL
    individually and on behalf of all others
14  similarly situated,

15         v.

16  JPMORGAN CHASE BANK, N.A.; a
    banking corporation, CHASE HOME
17  FINANCE, LLC; a limited liability
    company, CHASE HOME FINANCE, INC.;
18  a corporation; and DOES 1-300,

19         Defendants.

20

21

22

23

24

25

26

27

28

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that Defendants JPMorgan Chase Bank, N.A.; and Chase Home Finance, LLC (collectively, "Chase"), hereby remove to this Court the state court action described below, pursuant to 28 U.S.C. § 1441.

## PROCEDURAL HISTORY

1.    At issue is a class action complaint against Chase, filed by plaintiffs Barbara L. Schramm and Steven L. Weinstein on October 30, 2009. The complaint was filed in the Superior Court of the State of California for the County of Los Angeles, and captioned *Schramm v. JPMorgan Chase Bank*, Case No. BC424829.

2.    On November 24, 2009, plaintiff hand-served a copy of the summons and complaint on Chase's registered agent. A true and correct copy of the summons and complaint received by Chase is attached hereto as Exhibit A. No other "process, pleadings, [or] orders" have been served on Chase. 28 U.S.C. § 1446(a).

3.    On information and belief, plaintiffs have not yet served, or attempted service of, process on Chase Home Finance, Inc.

4.    The complaint asserts six causes of action under California law, purportedly on behalf of a class of:

> All persons who obtained ARM Loans in the State of California from Defendants secured by a residential single-family dwelling place or condominium located in the State of California, and received loan disclosures stating that they would be charged an initial interest rate that was the sum of the then current index and a set margin but instead were charged an initial interest rate that was higher than the sum of the then-current index and margin as specified in the loan disclosures and who either have not yet discovered this or discovered it during the Class Period which shall be the maximum period of time allowable under the longest available limitations period under applicable laws.

1   (Compl. ¶ 17.)

2                   **TIMELINESS OF REMOVAL**

3       5.   Plaintiffs hand-served Chase's registered agent with a copy of the

4   summons and complaint on November 24, 2009.  This notice of removal is timely

5   under 28 U.S.C. § 1446(b) and Fed. R. Civ. P. 6(a) because this notice is filed

6   within thirty (30) days after service of the summons and complaint was effectuated

7   upon Chase.

8               **BASIS FOR REMOVAL JURISDICTION**

9       6.   Generally.  This action is a civil class action over which this Court has

10  original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the

11  Class Action Fairness Act, Pub. L. No. 109-2, 119 Stat. 4 (2005), and is one that

12  may be removed to this Court pursuant to the provisions of 28 U.S.C. §§ 1446 and

13  1453.  In this putative class action, at least one member of the class of plaintiffs is

14  a citizen of a state different from that of Chase, and the amount that plaintiffs'

15  allegations place in controversy exceeds $5,000,000, exclusive of interest and

16  costs.

17      7.   Covered Class Action.  The Class Action Fairness Act defines a "class

18  action" as "any civil action filed under rule 23 of the Federal Rules of Civil

19  Procedure or similar State statute . . . authorizing an action to be brought by 1 or

20  more representative persons as a class action."  See 28 U.S.C. § 1332(d)(1)(B).

21  The present action is a "class action" for purposes of the Class Action Fairness

22  Act.  Plaintiffs bring their action individually and on behalf of a California class of

23  all ARM loan borrowers who "received loan disclosures stating that they would be

24  charged an initial interest rate that was the sum of the then current index and a set

25  margin but instead were charged an initial interest rate that was higher than the

26  sum of the then-current index and margin."  (Compl. ¶ 17.)  Plaintiffs allege that

27  "the total number of class members is at least in the thousands and Class members

28

1   are so numerous and geographically dispersed across the State of California that
2   joinder of all class members is impracticable."  (Compl. ¶ 18(B).)

3       8.   <u>Diversity</u>.  The diversity requirement of 28 U.S.C. § 1332(d)(2) is
4   satisfied for the following reasons:

5       (a)   Plaintiffs are citizens of California.  (Compl. ¶ 5.)

6       (b)   JPMorgan Chase Bank, N.A. is a national banking association
7             organized under the laws of the United States of America, and is
8             thus deemed a citizen of the state in which it is located.  28 U.S.C.
9             § 1348.  JPMorgan Chase Bank, N.A. is located in the State of
10            Ohio, the state designated in its articles of association as its main
11            office. *See Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 318
12            (2006).

13      (c)   Chase Home Finance, LLC is a Delaware limited liability
14            company, with its principal place of business in Iselin, New Jersey.
15            Chase Home Finance, LLC is 100% owned by Chase Home
16            Finance, Inc., a Delaware corporation, with its principal place of
17            business in Iselin, New Jersey.  As such, Chase Home Finance,
18            LLC, is a citizen of Delaware and New Jersey. *See Johnson v.*
19            *Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir.
20            2006).

21      (d)   The citizenship of defendants sued as "Doe" defendants is
22            disregarded for purposes of removal.  28 U.S.C. § 1441(a).

23      9.   <u>Matter in Controversy</u>.  Pursuant to 28 U.S.C. § 1332(d)(2), this Court
24  has "original jurisdiction of any civil action in which the matter in controversy
25  exceeds the sum or value of $5,000,000 exclusive of interest and costs."  As
26  provided in 28 U.S.C. § 1332(d)(6), "[i]n any class action, the claims of the
27  individual class members shall be aggregated to determine whether the matter in
28

1  controversy exceeds the sum or value of $5,000,000, exclusive of interest and

2  costs."

3      10.  Chase does not concede that it is actually liable to plaintiffs or the

4  putative class in any amount.  Indeed, Chase contends that plaintiffs and the class

5  they purport to represent are entitled to recover nothing.  However, a fair reading

6  of the allegations of the complaint reveals the matter in controversy exceeds the

7  jurisdictional minimum of $5,000,000.

8      11.  The complaint alleges that Chase wrongfully charged plaintiffs

9  excessive interest.  (Compl. ¶ 23.)  In this regard, plaintiffs allege that they were

10  charged excessive interest on two adjustable rate mortgages ("ARMs")—a 5-year

11  ARM and a 3-year ARM.  (Compl. ¶¶ 54-55.)  Although plaintiffs do not state the

12  amount of their purported damages stemming from the 5-year ARM, they claim

13  damages of $6,142 stemming from the 3-year ARM.  (Compl. ¶ 54.)  They further

14  allege that the class numbers "at least in the thousands."  (Compl. ¶ 18(B).)

15  Accepting plaintiffs' allegation that they are typical members of the class, (Compl.

16  ¶ 18(C)), and even if the class were to consist of only one thousand members, the

17  excessive interest claim puts more than $6,142,000 in controversy.  28 U.S.C.

18  § 1332(d)(6).

19      12.  In addition to the foregoing amounts, the complaint seeks "punitive

20  damages to be determined at trial according to the relative culpability, net worth,

21  income and financial resources of each Defendant."  (Compl. Prayer.)  This

22  requested relief further demonstrates that the amount in controversy exceeds

23  $5,000,000.

24      13.  The complaint also prays for an award of attorneys' fees under

25  California Code of Civil Procedure § 1021.5 and for an injunction.  (Compl.

26  Prayer.)  This requested relief further demonstrates that the amount in controversy

27  exceeds $5,000,000.

28

14. <u>No Class Action Fairness Act Exclusions Apply</u>. This action does not fall within the permissive exclusion of 28 U.S.C. § 1332(d)(3), nor the mandatory exclusions of section 1332(d)(4), because none of the defendants is a citizen of California.

15. For the reasons stated above, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), and this action is removable pursuant to 28 U.S.C. § 1441(b).

## NOTICE TO STATE COURT AND PLAINTIFFS

16. Counsel for Chase certifies that copies of this Notice of Removal will be promptly filed with the Clerk of the Superior Court of the State of California, Los Angeles County, and promptly served on the plaintiffs. 28 U.S.C. § 1446(d).

Dated:    December 23, 2009

MICHAEL J. AGOGLIA
WENDY M. GARBERS
MORRISON & FOERSTER LLP


By: _Wendy Garbers /MP_
Wendy M. Garbers

Attorneys for Defendants
JPMORGAN CHASE BANK,
N.A., and CHASE HOME
FINANCE, LLC

NOTICE OF REMOVAL

6

sf-2769090

# EXHIBIT A



# SUMMONS
### (CITACION JUDICIAL)

**SUM-100**

*FOR COURT USE ONLY (SOLO PARA USO DE LA CORTE)*

**FILED**
LOS ANGELES SUPERIOR COURT

OCT 30 2009

JOHN A. CLARKE, CLERK

BY DAWN ALEXANDER, DEPUTY

**NOTICE TO DEFENDANT:** JPMORGAN CHASE BANK, N.A., a
**(AVISO AL DEMANDADO):** banking corporation; CHASE HOME
FINANCE, LLC, a limited liability company; CHASE HOME
FINANCE, INC., a corporation, AND DOES 1-300

**YOU ARE BEING SUED BY PLAINTIFF:** BARBARA L. SCHRAMM, an
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):** individual, and
STEVEN L. WEINSTEIN, an individual, individually and
on behalf of all others similarly situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER (*Número del Caso*): |
|---|---|
| (*El nombre y dirección de la corte es*): | **BC 424829** |
| SUPERIOR COURT OF CALIFORNIA | |
| 111 North Hill Street | |
| Los Angeles, California 90012 | |
| Central District | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(*El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es*):
John S. Peterson, State Bar No. 101215    (213) 236-9720    (213) 236-9724
PETERSON LAW GROUP PROFESSIONAL CORPORATION
707 Wilshire Boulevard, Suite 5270
Los Angeles, California 900

DATE:                                        JOHN A. CLARKE, CLERK                    DAWN ALEXANDER              , Deputy
(*Fecha*) OCT 30 2009                        Clerk, by                                                            (*Adjunto*)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(*Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).*)

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (*specify*):

[ ] on behalf of (*specify*):

under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
       [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
       [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
       [ ] other (*specify*):

[SEAL]

BLUM | COLLINS LLP
STEVEN A. BLUM, BAR NO. 133208
CRAIG M. COLLINS, BAR NO. 151582
707 WILSHIRE BLVD., STE. 4880
LOS ANGELES, CA 90017
TELEPHONE (213) 572-0400
FACSIMILE (213) 572-0401

GIRARDI | KEESE
JOHN A. GIRARDI, BAR NO. 54917
HOWARD B. MILLER, BAR NO. 31392
1126 WILSHIRE BLVD.
LOS ANGELES, CA 90017
TELEPHONE (213) 977-0211
FACSIMILE (213) 481-1554

**FILED**
LOS ANGELES SUPERIOR COURT

OCT 3 0 2009

JOHN A. CLARKE, CLERK
BY DAWN ALEXANDER, DEPUTY

PETERSON LAW GROUP PC
JOHN S. PETERSON, BAR NO. 101215
707 WILSHIRE BLVD., STE. 5270
LOS ANGELES, CA 90017
TELEPHONE (213) 236-9720
FACSIMILE (213) 236-9724

NICK T. RECKAS
BAR NO. 67235
336 BON AIR CENTER, #296
GREENBRAE, CA 94904
TELEPHONE (415) 464-0913

ATTORNEYS FOR PLAINTIFFS
BARBARA L. SCHRAMM AND STEVEN L WEINSTEIN

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

BARBARA L. SCHRAMM, an individual, and
STEVEN L. WEINSTEIN, an individual, individually and on behalf of all others similarly situated,

Plaintiffs,

vs.

JPMORGAN CHASE BANK, N.A.; a banking corporation,
CHASE HOME FINANCE, LLC; a limited liability company,
CHASE HOME FINANCE, INC.; a corporation, AND
DOES 1-300,

Defendants.

Case No. **BC 424829**

**PLAINTIFFS BARBARA L. SCHRAMM'S AND STEVEN L. WEINSTEIN'S CLASS ACTION COMPLAINT FOR: (1) INTENTIONAL MISREPRESENTATION; (2) CONCEALMENT; (3) PROMISE MADE WITHOUT INTENT TO PERFORM; (4) NEGLIGENT MISREPRESENTATION OF FACT; (5) VIOLATIONS OF THE UNFAIR COMPETITION ACT, INCLUDING PERMANENT INJUNCTION; AND (6) UNJUST ENRICHMENT**

**CLASS ACTION**

Dept # 311
Judge Carl J. West

1   Plaintiffs Barbara L. Schramm and Steven L. Weinstein, individually, and on behalf of all

2   others similarly situated, allege the following on information and belief:

3                                    **SUMMARY**

4   1.      Plaintiffs bring this action pursuant to various provisions of the California Civil Code

5   and common law to recover damages that Plaintiffs and members of the class, as defined below, have

6   sustained due to the violations of Defendants as herein alleged.  Plaintiffs also bring this action

7   pursuant to Bus. & Prof. Code §§ 17203 and 17204 to obtain injunctive and restitutionary relief from

8   Defendants due to their violations of Bus. & Prof. Code §§ 17200 *et seq.* (the "Unfair Competition

9   Act").

10  2.      Jurisdiction of this Court is based on the Unfair Competition Act and Code Civ. Proc. §

11  382.  Venue as to each Defendant is proper in this judicial district pursuant to Bus. & Prof. Code §

12  17203 and Code Civ. Proc. §§ 395(a) and 395.5.  Each Defendant maintains an office, transacts

13  business, is found in or has an agent within the State of California, and, more particularly, within the

14  County of Los Angeles.   Plaintiffs are informed and believe and thereon allege that Defendants each

15  do more business in the County of Los Angeles than in any other county in the State of California.

16  3.      The unlawful acts committed and the conduct undertaken pursuant to the conspiracy

17  alleged herein has had and continues to have, a direct effect on consumers within the State of California

18  and the County of Los Angeles.

19  4.      As used herein, the terms "person" or "persons" have the same meaning as set forth in

20  Section 17201 of the California Business and Professions Code.

21                                    **PLAINTIFFS**

22  5.      Plaintiffs Barbara L. Schramm and Steven L. Weinstein are residents of Oakland,

23  California.  Plaintiffs and the Class members they represent purchased adjustable rate mortgages

24  ("ARM LOANS") from Defendants.

25

26

28

**DEFENDANTS**

6.     Defendant JPMorgan Chase Bank, N.A. ("JPMORGAN CHASE BANK") is a banking corporation chartered under the laws of the United States of America with its principal place of business in Iselin, New Jersey.  JPMORGAN CHASE BANK is liable for all of the unlawful conduct alleged herein.

7.     JPMORGAN CHASE BANK is a successor-in-interest by merger to Chase Manhattan Mortgage Corporation ("CHASE MANHATTAN"), formerly a New Jersey corporation.

8.     Defendant Chase Home Finance, LLC ("CHF LLC") is organized under the laws of the State of Delaware with its principal place of business in Iselin, New Jersey. CHF LLC is a successor-in-interest by merger to CHASE MANHATTAN.  CHF LLC also is liable for all of the unlawful conduct alleged herein.

9.     Defendant Chase Home Finance, Inc. ("CHF INC.") is organized under the laws of the State of Delaware with its principal place of business in Iselin, New Jersey.  Since at least December 31, 2005, JPMORGAN CHASE BANK has wholly owned CHF INC. which in turn has wholly owned CHF LLC.  CHF INC. also is liable for all of the unlawful conduct alleged herein.

**THE DOE DEFENDANTS AND CO-CONSPIRATORS**

10.     The true names and identities, whether individual, associate or corporate of the Defendants sued herein as Doe Conspirators 1-100, Doe Noteholders 101-200 and Does General 201-300 and the full nature and extent of their participation, activities and conduct on which this action is based, are presently unknown to Plaintiffs, who pray leave to amend this complaint to allege their true names and identities, and the extent of their participation, activities and conduct when the same and their liability for damages or other relief to Plaintiffs shall become known.  Plaintiffs are informed and believe and thereon allege that said Doe Defendants are liable to Plaintiffs in some measure for the damages or other relief sought herein.

11.     Wherever the words "Defendant" or "Defendants" are used herein, it shall include the Doe Conspirators, Doe Noteholders and Does General as well as the named Defendants.

1    12.    At all relevant times and at places unknown to Plaintiffs and the Class members, as

2    defined below, and known to said conspirators, Defendants JPMORGAN CHASE BANK, CHF LLC,

3    CHF INC. and DOE CONSPIRATORS 1-100, inclusive and each of them, conspired and agreed with

4    each of the others to defraud Plaintiffs and to otherwise engage in unfair competition by means of

5    unfair, unlawful and/or fraudulent business acts or practices in the manner and as hereinafter described,

6    and at all times mentioned, said Defendants named in this paragraph, and each of them, were acting

7    pursuant to, in furtherance of, and within the scope and purpose of said conspiracy.

8    13.    Various other individuals, partnerships, firms, and corporations, the identities of which

9    are presently unknown, and who have not been named as Defendants in the Complaint, have

10   participated as co-conspirators with the Defendants in the violations alleged herein, and have

11   performed acts and made statements in furtherance thereof.

12   14.    The acts charged in this Complaint as having been done by Defendants were authorized,

13   ordered or done by their respective officers, agents, employees or representatives while actively

14   engaged in the management, direction, or control of each Defendant's business or affairs.

15   15.    The acts charged in the Complaint were done by each of the co-conspirators, were fully

16   authorized by each of those co-conspirators, or ordered or done by duly authorized officers, agents,

17   employees, or representatives of each co-conspirator while actively engaged in the management,

18   direction, or control of such co-conspirator's business or affairs.

19   16.    This action pertains to various illegal lending practices that Defendants and/or their

20   predecessors-in-interest engaged in during the marketing and sale of adjustable rate mortgages to

21   Plaintiffs and the Class members, as defined below.

22                        **CLASS ACTION ALLEGATIONS**

23   17.    Plaintiffs bring this suit as a class action pursuant to Code Civ. Proc. § 382 on behalf of

24   themselves and as representatives of a class ("Class") composed of and defined as follows:

25

26

28

All persons who obtained ARM Loans in the State of California from Defendants secured by a residential single-family dwelling place or condominium located in the State of California, and received loan disclosures stating that they would be charged an initial interest rate that was the sum of the then current index and a set margin but instead were charged an initial interest rate that was higher than the sum of the then-current index and margin as specified in the loan disclosures and who either have not yet discovered this or discovered it during the Class Period which shall be the maximum period of time allowable under the longest available limitations period under applicable laws.

18.     This action has been brought and may be properly maintained as a class action pursuant to Code Civ. Proc. § 382 for the following reasons:

A.     The Class is ascertainable and there is a well-defined community of interest among the Class members;

B.     Due to the nature of the trade and commerce involved, Plaintiffs believe that the total number of class members is at least in the thousands and Class members are so numerous and geographically dispersed across the State of California that joinder of all class members is impracticable;

C.     Plaintiffs' claims are typical of the claims of the Class members. Except as to the amount of damages each member of the Class has sustained, all other questions of law and fact are common to the Class members, including, but not limited to, the conspiracy, the acts of fraud, misrepresentation and unfair competition herein alleged, and the effects of such violations.

D.     Questions of law or fact which are common to the Class members predominate over any questions affecting only individual Class members. Among the questions of law and fact common to the class are the following:

i.     whether Defendants engaged in a conspiracy among themselves to defraud Plaintiffs and the Class members and to otherwise engage in unfair competition by means of unfair, unlawful and/or fraudulent business acts or practices;

ii.     the duration and extent of the conspiracy alleged in this Complaint;

1    iii.    whether Defendants' acts, omissions, misrepresentations, practices and/or non-

2    disclosures regarding the sale of ARM Loans were unlawful;

3    iv.    whether Defendants' conduct caused injury to Plaintiffs and the Class members;

4    v.    whether Defendants' conduct violates Bus. & Prof. Code §§ 17200 *et seq.*; and

5    vi.    the appropriate nature of class-wide equitable relief.

6    E.    Plaintiffs will fairly and adequately protect the interests of the Class members in that

7    Plaintiffs have no interests that are antagonistic to other Class members and have retained counsel

8    competent and experienced in the prosecution of class actions of this type to represent themselves and

9    the Class members;

10    F.    A class action is superior to other available methods for the fair and efficient

11    adjudication of this litigation since individual joinder of all damaged Class members is impractical.

12    The damages suffered by individual Class members are relatively small, given the expense and burden

13    of individual prosecution of the claims asserted in this litigation.  Thus, absent the availability of class

14    action procedures, it would not be feasible for Class members to redress the wrongs done to them.

15    Even if the Class members could afford individual litigation, the court system could not.  Further,

16    individual litigation presents the potential for inconsistent or contradictory judgments and would

17    greatly magnify the delay and expense to all parties and to the court system.  Whatever difficulties may

18    exist in the management of the class action will be greatly outweighed by the benefits of the class

19    action procedure, including, but not limited to, providing claimants with a method for redress of claims

20    that may otherwise warrant individual litigation. Therefore, the class action device presents far fewer

21    case management difficulties and will provide the benefits of unitary adjudication, economy of scale

22    and comprehensive supervision by a single court; and

23    G.    In the absence of a class action, Defendants would be unjustly enriched because they

24    would be able to retain the benefits and fruits of their wrongful conduct.

25    **FACTUAL ALLEGATIONS**

26    19.    At all relevant times until the present, Defendant JPMORGAN CHASE BANK and its

28    predecessor in interest, CHASE MANHATTAN, were in the business of originating and servicing

mortgage real estate loans secured by real estate mortgages. As real estate mortgage lenders, Defendant JPMORGAN CHASE BANK and its predecessor in interest were required under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 *et seq.* and Regulation X, 24 C.F.R. § 3500, as amended ("RESPA") and the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and Regulation Z, 12 C.F.R. § 226, as amended ("TILA"), to make certain, disclosures of anticipated charges and the final cost of the loans to their borrowers.

20.    To evidence their compliance with RESPA and TILA as a condition for closing five-, seven-, and ten-year ARM Loans, Defendants have required all borrowers of said ARM Loans, including Plaintiffs and Class members, to acknowledge that they have received certain disclosures. Defendants require borrowers to read and sign a form document entitled "5/1, 7/1 and 10/1 Non-Convertible Fixed/Adjustable Rate Loan Disclosure (Non-Construction)" (hereinafter the "5/1 ARM Disclosure"). Attached hereto as Exhibit A is an example of a true and correct unsigned copy of a 5/1 ARM Disclosure.

21.    The Defendants have done the same thing with shorter-term fixed-rate loans. As a condition for closing one- and three-year ARM Loans, Defendants have required all borrowers of said ARM Loans, including Plaintiffs and Class members, to read and sign a similar form document entitled "1/1 & 3/1 Non-Convertible ARM Disclosure (Non-Construction)" (the "3/1 ARM Disclosure"). Attached hereto as Exhibit B is a true and correct signed copy of a 3/1 ARM Disclosure.

<u>Summary of the Misleading Statements</u>

22.    This case is about the misleading nature of these disclosure forms and also the promissory notes that borrowers signed. The Defendants deceived the Plaintiffs and Class members about the interest rate that they would pay in the initial loan period—*i.e.,* the period before the first adjustment of the interest rate (which could be a period of three years, five years, or something else.).

23.    The Defendants informed the Plaintiffs and Class members that their "initial Interest Rate" would be the sum of an Index plus a Margin, or possibly some rate *less* than this sum, but in truth the Defendants charged the Plaintiffs and Class Members an initial interest rate <u>higher</u> than the sum of the Index and the Margin. The Defendants' conduct was deceptive and unfair.

1    <u>The Section Titled "How Your Interest Rate is Determined"</u>

2    <u>Does not State how the Interest Rate is Determined</u>

3    24.    Section I.A. of the 5/1 ARM Disclosure is entitled **"How Your Interest Rate is**

4    **Determined."**  Based on its title, one would reasonably believe this section of the disclosure statement

5    would describe how one's interest rate is determined.

6    25.    Section I.A. states in relevant part:

7

8    Your interest rate will be based on the weekly average yield on United
     States Treasury securities adjusted to a constant maturity of 1 year (the
9    "Index") plus an amount called a "Margin."  Ask us for our current Margin
     and interest rate. . . .  The Index and the Margin will be specified in the
10   promissory note (the "Note") which evidences your ARM loan. . . .

11   The interest rate you pay until the first Rate Change Date is called the
     "Initial Interest Rate."
12

13   26.    This section is misleading in two ways.  First, since this section is titled **"How Your**

14   **Interest Rate is Determined,"** and since it states only that the interest rate is the sum of the Index and

15   the Margin, and nowhere mentions that Defendants will arbitrarily charge an interest rate during the

16   initial period that is <u>higher</u> than the sum of the Index and the Margin, it is materially misleading.

17   27.    Second, this section is misleading because it purports to explain how the interest rate is

18   determined but in fact omits any mention of how the Defendants actually determined the interest rate in

19   the initial period.  The Defendants concealed their actual basis for setting the initial interest rate, as

20   explained more in paragraph 38 of this Complaint below.

21   <u>The Section Titled "How Your Interest Can Change" is Materially Misleading</u>

22   28.    Section I.B. of the 5/1 ARM Disclosure is entitled **"How Your Interest Rate Can**

23   **Change."**  It explains several items including how and when Defendants will adjust the interest rate at

24   each future Rate Change Date, limitations (or "caps") on any increase or decrease in the interest rate on

25   the change dates, the life-of-the-loan cap and floor on the interest rate, and the rounding factor.  In

26   relevant part, this section also alerts a borrower that the initial Interest Rate may be "discounted":

28

> Your initial Interest Rate may be discounted and will not be tied to the Index. It will be adjusted to the sum of the then-current Index plus the Margin at the first Rate Change Date, subject to the interest rate caps explained above. Ask us about the amount of the current interest rate discount.

29.    This is misleading in three ways.  First, since this section states that the initial interest rate may be "discounted" from the Index plus Margin rate but omits to mention that Defendants will arbitrarily charge an interest rate during the initial period that is <u>higher</u> than the sum of the Index and the Margin, it is materially misleading.  Consistent with the common understanding and industry practice of the word "discount," the Defendants' ARM Disclosures conveyed to Plaintiffs and the Class members that the Initial Interest Rate might be *less* than the sum of the Margin and the current value of the Index but did not reasonably convey the information that the Initial Interest rate could be <u>higher</u> than the sum of the current Index and the Margin.  No one expects a "discounted" rate to be <u>higher</u> than the regular rate.

30.    Second, this disclosure about the *initial* interest rate possibly being discounted is buried under the incorrect heading "How Your Interest Rate Can Change" instead of where it belongs under the heading "How Your Interest Rate is Determined."

31.    Third, the section promises that the interest rate *after* the first rate change date will be "subject to the interest rate caps explained above"—in other words, the interest rate in the second loan period will not exceed the Index plus the Margin plus the maximum adjustment allowed on any single rate change date.[1]  In reality, however, by illegally boosting the interest rate in the initial loan period, the Defendants boosted themselves into charging illegally higher interest rates in the second and subsequent loan periods as well.  This was deceptive and misleading.

---

[1]    Section 4 of both the 5/1 ARM Note and 3/1 ARM Note provides that as of the first Rate Change Date (and every 12 months thereafter) the interest rate on the Notes would be adjusted to an amount equal to the then-current Index (which might then be higher than at the outset of the loan) plus the margin, provided that resulting interest rate for the next loan period could not exceed the interest rate for the previous loan period by more than a certain number of percentage points (typically, two or three).  In other words, the interest rate could rise on the rate change date but would be capped at, say, an increase of two percentage points.

32.     This can be illustrated by example.  Assuming that the maximum increase on any single rate change date is 2 percentage points (as it was in the case of the Plaintiffs' loan), Section I.B. of the 5/1 ARM Disclosure promises that the interest rate after the first rate change date would not exceed the Index plus Margin plus 2 percentage points.  For example, if the sum of the Index plus the Margin in the initial period yielded an interest rate of 3 percent, and the cap on rate changes were 2 percent, the borrowers would expect that the interest rate after the first change date (*i.e.,* in the second loan period) could not exceed 5 percent.  However, if the Defendants arbitrarily set a interest rate during the initial period exceeding the Index plus the Margin (in violation of the disclosure statements) of, say, 4 percent, the Defendants would adjust the interest rate on the first rate change date by the 2 percentage point cap, and end up charging 6 percent in the second loan period instead of the maximum 5 percent promised in the disclosure statements.  In this manner, the Defendants overcharged the Plaintiffs and the Class members not only in the initial loan periods but also in subsequent loan periods as well.

33.     The 3/1 ARM Disclosure for shorter term loans makes the exact same disclosures but refers to a different index (*i.e.,* the average of interbank offered rates for one-year dollar-denominated deposits in the London market, or the "LIBOR").

## The Defendants Overcharged the Plaintiffs

34.     A reasonable person reading either disclosure statement would conclude that the borrower would pay interest on his or her loan at a rate equal to the Index plus the Margin, or perhaps some discounted rate during the initial period.  For the Plaintiffs' 3/1 ARM Loan, for example, the Index was the LIBOR Rate and the Margin was fixed at 2.25 percent.[2]  The Plaintiffs were charged an initial interest rate of 3.875 percent.  Thus, they naturally would have assumed at the time that the LIBOR Rate must have been 1.625 percent (*i.e.,* their initial interest rate of 3.875 percent minus the margin of 2.25 percent).

---

[2]     The amount of each borrower's Margin is stated in the promissory notes.  Either simultaneously with or shortly after giving them either the 5/1 ARM Disclosure or 3/1 ARM Disclosure and prior to the loan closing, Defendants required borrowers, including Plaintiffs and members of the Class, to sign a "Fixed/Adjustable Rate Note" and a "Fixed/Adjustable Rate Rider."  Examples of true and correct copies of the notes and riders provided by Defendants, are attached hereto as Exhibits C and D, respectively, and shall hereinafter be collectively referred to as the "ARM Note."  The amount of the "Margin," which is referenced in the ARM Disclosures, is stated in Section 4(C) of the ARM Notes.

35.     In fact, however, though unbeknownst to the Plaintiffs at the time, the value of the LIBOR index referenced in the 3/1 ARM Disclosure as of May 13, 2003, which was the date of the 3/1 ARM Note, was only 1.27 percent, not the 1.625 percent necessary to yield an initial interest rate of 3.875 percent. In effect, Defendants secretly padded the LIBOR rate (by a factor of almost 30 percent) to create an artificially high initial interest rate.

36.     If the Defendants had in fact calculated the Plaintiffs' initial interest rate as they said they would do so, the Defendants would have added the index of 1.27 percent and the margin of 2.25 percent which, when rounded, would have yielded an initial interest rate of 3.50 percent. By charging the Plaintiffs 3.875 percent interest in the initial period instead of 3.50 percent, and by overcharging all of the Class members in the same manner, the Defendants reaped a ton of money which they no doubt used to pay multi-million dollar bonuses to their Wall Street executives.

37.     Unknown and undisclosed to Plaintiffs and the Class members, Defendants have charged, and continue to charge, Plaintiffs and the Class members initial interest rates (and interest rates in subsequent loan periods) that are higher than the rate disclosed in the ARM Disclosures.

38.     When asked to explain how the Defendants contrived the initial interest rate (since it is clear Defendants did not use the Index-plus-Margin formula that they promised in the disclosure statements to use), Rodney K. Reusher, Assistant Vice President, Legal and Compliance Department for CHF LLC, eventually admitted to Plaintiffs that the initial interest rate as specified in the 3/1 ARM Disclosure was based on factors that were never disclosed and were unknown to Plaintiffs and the Class members. Mr. Reusher said in a letter to Plaintiffs:

> "The initial loan pricing, which includes any combination of interest rate, points, and other origination fees that Chase quotes to prospective applicants, is determined internally and may take into account various factors, such as competitor pricing for similar loan products, internal cost of funds, customer creditworthiness, etc. This applies to both fixed interest rate and adjustable interest rate loan products."

39.     In effect, he said they made it up.

## SECURITIZATION OF THE NOTES

40.     Based upon information and belief, CHASE MANHATTAN sold, assigned or transferred its interest in the 5/1 ARM Loan and the 3/1 ARM Loan to trusts, commonly named the J.P. Morgan Mortgage Trusts, which became the Doe Noteholders (the "Trusts"). The Trusts were or are affiliates of JPMORGAN CHASE BANK and sold "pass through certificates" through other JPMORGAN CHASE BANK affiliates to third-party beneficiaries pursuant to the federal Securities Act of 1933. Prior to October 2004, CHASE MANHATTAN acted as the servicing agent for the trustee Doe Noteholders and in that process collected and directly or indirectly remitted to said trustee Doe Noteholders the interest and principal payments that were made by Plaintiffs and the Class members. Since October 2004, CHF LLP has acted as the servicing agent for the Trusts.

## FIRST CAUSE OF ACTION FOR INTENTIONAL MISREPRESENTATION

## (Civ. Code §§ 1709, 1710(1))

## (Against All Defendants)

41.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

42.     Plaintiffs and the Class members were provided with and signed, and returned to CHASE MANHATTAN, standardized ARM Disclosures which represented to them that the initial interest rate in their corresponding promissory note evidencing the ARM Loan would be the sum of the interest rate based on a specified index and a margin to be specified in the ARM Note (or possibly a "discounted" initial interest rate).

43.     That was a lie. Or, as lawyers say, the foregoing representations made by CHASE MANHATTAN through its agents were false. In reality, the interest rates in the promissory notes were not the sum of the indexes identified in the respective disclosures plus a margin identified in the promissory notes. Rather, they were higher rates set according to a number of factors that CHASE MANHATTAN and its agents deliberately did not disclose to Plaintiffs and the Class members, including, but not limited to, competitor pricing for similar loan products, internal cost of funds, and customer creditworthiness. As a result of these false representations, the initial interest rates in the

1  respective promissory notes were higher than the rates would have been had they been calculated as
2  represented in the disclosure statements.

3      44.     Defendants made the foregoing misrepresentations to Plaintiffs and Class members
4  knowing the same to be false, incomplete and misleading at the time they were made, or made them
5  recklessly without knowing the truth or falsity of them, in an effort to induce Plaintiffs and the Class
6  members to purchase ARM Loans from Defendants.

7      45.     When CHASE MANHATTAN made these representations, CHASE MANHATTAN
8  knew them to be false and made these representations with the intention to deceive and defraud
9  Plaintiffs and the Class members, and to induce Plaintiffs and Class members to act in reliance on these
10 representations in the manner herein alleged, or with the expectation that Plaintiffs and Class members
11 would so act.

12     46.     At the time CHASE MANHATTAN made its false representations and at the time
13 Plaintiffs and the Class members took the actions alleged herein, Plaintiffs and the Class members were
14 ignorant of the falsity of CHASE MANHATTAN's representations and believed them to be true and
15 complete. In reliance upon these representations, Plaintiffs and the Class members were induced to,
16 and did, enter into the ARM Loans with CHASE MANHATTAN. Had Plaintiffs and the Class
17 members known the truth they would not have entered into these loans with CHASE MANHATTAN.
18 Plaintiffs' and Class members' reliance on CHASE MANHATTAN's representations were justified
19 because the fraudulent representations as to how the interest rate on their loans would be determined
20 were made in disclosures required by law and Plaintiffs and the Class members believed that CHASE
21 MANHATTAN was a trustworthy, reputable company.

22     47.     As a proximate result of CHASE MANHATTAN's fraudulent conduct as herein alleged,
23 Plaintiffs and the Class members have incurred and will continue to incur damages in the amount of
24 interest they were induced to pay which was greater than they would have paid had the interest rates
25 been calculated in the manner that CHASE MANHATTAN had represented.

26     48.     Plaintiffs and the Class members lacked knowledge or suspicion that Defendant
28 JPMORGAN CHASE BANK and its co-conspirators had misrepresented the formula for calculating

1  the interest rate on their one-, three-, five-, seven-, and ten-year ARM Loans. Plaintiffs did not

2  commence to discover the falsity of Defendants' misrepresentations and concealment until within three

3  years of the filing of this suit.

4       49.    Defendants increased the interest rate on Plaintiffs' loan to 5.875 percent. The "previous

5  interest rate" was 3.875 percent, the "previous index" was 1.384 percent, and the "margin" was 2.25

6  percent. These numbers don't add up. When added together, the Index for the previous period (1.384

7  percent) and the Margin (2.25 percent) equal (when rounded) only 3.625 percent. This figure is .25

8  percent less than the 3.875 percent interest rate that Defendants had charged under the 3/1 ARM note.

9       50.    Furthermore, because of the 2 percentage-point limitation on annual increases in the 3/1

10  ARM note, this interest rate increase should have been capped at 5.625 percent, instead of rising to

11  5.875 percent.

12       51.    Plaintiff Weinstein made numerous inquiries to CHF LLC for an explanation of the

13  discrepancy. On or about April 25, 2007, Plaintiffs received their first explanation from an agent of

14  CHF LLC concerning why the interest rate in the 3/1 ARM Note did not match the interest rate which

15  was the sum of the LIBOR index and margin specified in the letter. Christopher Beal, an employee at

16  CHF LLC admitted to Plaintiff Weinstein that the initial interest rate specified in the 3/1 ARM Note

17  was not based upon the formula specified in the 3/1 ARM Disclosure.

18       52.    Plaintiff Weinstein's inquiries were then referred to CHF LLC's legal department.

19  Plaintiff Weinstein received Mr. Reusher's letter, referenced in paragraph 38 above, stating that

20  "Chase" did not use the formula provided in its disclosures to determine the initial interest rate on

21  Plaintiffs' loans. Rather, Chase based its "loan pricing" on such factors as competitor pricing, internal

22  cost of funds, customer credit worthiness and other factors.

23       53.    The Defendants have never explained their basis for having used an initial Index of

24  1.384 percent. Through subsequent investigation, Plaintiffs have determined that this was the value of

25  the LIBOR index as of February 25, 2003, which is also the date of the first 3/1 ARM Disclosure.

26  Plaintiffs have also determined that as of May 13, 2003, which is the date of the 3/1 ARM Note, the

28  value of the LIBOR index referenced in the 3/1 ARM Disclosure had dropped to 1.27 percent. The

1  sum of 1.27 percent and the margin of 2.25 percent when rounded is 3.50 percent. In other words, the

2  initial interest rate on the 3/1 ARM Note and its subsequent reset exceeded the formulas in the 3/1

3  ARM Disclosures by 0.375 percent.

4  54.    Plaintiffs estimate that based upon the 3.875 percent initial interest rate, the first interest

5  rate adjustment to 5.875 percent, and a second interest rate adjustment to 7.625 percent which was

6  effective as of June 1, 2007, they paid $96,004 in interest on the 3/1 ARM Loan (including prepaid

7  interest of $234). The 3/1 ARM Loan was paid in full on July 5, 2007. Had the initial interest rate been

8  set at 3.50 percent, as required by the 3/1 ARM Disclosures and adjusted to 5.50 percent and 7.50

9  percent, respectively, as permitted by the 3/1 ARM Note, Plaintiffs' interest payments would have

10  totaled $89,882. Hence, Plaintiffs paid approximately $6,142 more interest than the amount they

11  should have paid based upon the 3/1 ARM Disclosures. In addition Plaintiffs paid $2,660 in closing

12  costs, exclusive of prepaid interest. Of this amount, CHASE MANHATTAN got $642.

13  55.    The disclosures concerning the 3/1 ARM Loan caused Plaintiffs to investigate in May

14  2007 the interest they were charged on a 5/1 ARM Loan that they had obtained from the Defendants in

15  October 2001. As a result of their investigation, Plaintiffs discovered that they had also been

16  overcharged for interest on this loan.

17  56.    Plaintiffs and the Class members did not discover the fraudulent acts until and/or

18  continued making payments on the fraudulent loans within three years of the filing of this complaint.

19  57.    Furthermore, Plaintiffs and the Class members are informed and believe and thereon

20  allege that Defendant JPMORGAN CHASE BANK and its co-conspirators have been committing

21  continuing overt acts in furtherance of the conspiracy including the collection of monthly installment

22  payments of principal and interest on the fraudulent loans made by them.

23  58.    The aforementioned conduct of CHASE MANHATTAN, which is the predecessor of

24  CHF LLC and JPMORGAN CHASE BANK, constitutes an intentional misrepresentation, deceit or

25  concealment of a material fact known to CHASE MANHATTAN with the intention of, on the part of

26  CHASE MANHATTAN, depriving Plaintiffs and the Class members of their property or legal rights or

28  otherwise causing injury, and was despicable conduct that subjected Plaintiffs and the Class members

1 to a cruel and unjust hardship in conscious disregard of Plaintiffs' and Class members' rights, so as to

2 justify an award of exemplary and punitive damages.

### SECOND CAUSE OF ACTION FOR CONCEALMENT

### (Civ. Code § § 1709, 1710(3))

### (Against All Defendants)

6     59.   Plaintiffs allege and incorporate by reference the allegations in the preceding

7 paragraphs.

8     60.   In violation of its legal duty to Plaintiffs and the Class members, CHASE

9 MANHATTAN suppressed and failed to reveal the fact that the initial interest rates specified in the

10 Notes would be calculated in a manner different from that set out in the respective loan disclosure

11 statements, and would instead be based on factors other than the sums of the respective indexes and

12 margins.

13     61.   The representations and failures to disclose information and suppressions of information

14 herein alleged to have been made by CHASE MANHATTAN were made with the intent to induce

15 Plaintiffs and the Class members to act in the manner herein alleged in reliance thereon.

16     62.   At the time these failures to disclose and suppressions of facts occurred, and at the time

17 the Plaintiffs and the Class members took the actions herein alleged, Plaintiffs and the Class members

18 were ignorant of the existence of the facts that CHASE MANHATTAN had suppressed and failed to

19 disclose. Had Plaintiffs and the Class members been aware of the existence of the facts not disclosed

20 by CHASE MANHATTAN, Plaintiffs and Class members would not have entered into these loans

21 with CHASE MANHATTAN.

22     63.   As a proximate result of CHASE MANHATTAN's fraudulent conduct as herein alleged,

23 Plaintiffs and the Class members have incurred and will continue to incur damages in the amount of

24 interest they were induced to pay which was greater than they would have paid had the initial interest

25 rates been calculated in the manner that CHASE MANHATTAN had represented to Plaintiffs.

26

28

1  64.    Furthermore, Plaintiffs and the Class members are informed and believe and thereon

2  allege that at all relevant times until the present, Defendant JPMORGAN CHASE BANK and its co-

3  conspirators have been committing continuing overt acts in furtherance of the conspiracy including the

4  collection of monthly installment payments of principal and interest on the fraudulent loans made by

5  them.

6  65.    The aforementioned conduct of CHASE MANHATTAN, which is the predecessor of

7  CHF LLC and JPMORGAN CHASE BANK, was an intentional misrepresentation, deceit or

8  concealment of a material fact known to CHASE MANHATTAN with the intention of, on the part of

9  CHASE MANHATTAN of thereby depriving Plaintiffs and the Class members of their property or

10  legal rights or otherwise causing injury, and was despicable conduct that subjected Plaintiffs and the

11  Class members to a cruel and unjust hardship in conscious disregard of Plaintiffs' and Class members'

12  rights, so as to justify an award of exemplary and punitive damages.

13  **THIRD CAUSE OF ACTION FOR PROMISE MADE WTHOUT INTENT TO PERFORM**

14  **(Civ. Code § § 1709, 1710(4))**

15  **(Against All Defendants)**

16  66.    Plaintiffs allege and incorporate by reference the allegations in the preceding

17  paragraphs.

18  67.    CHASE MANHATTAN promised to Plaintiffs and the Class members that the initial

19  interest rates in the ARM Notes would be the sum of the indexes disclosed in the respective loan

20  disclosure statements and the margins specified in the notes.

21  68.    At the time CHASE MANHATTAN made this promise to Plaintiffs and the Class

22  members, it had no intention of performing it and failed to perform it.

23  69.    The aforementioned promises were made by CHASE MANHATTAN with the intent to

24  induce Plaintiffs and the Class members to enter into ARM Loans with CHASE MANHATTAN.

25  70.    Plaintiffs and Class members, at the time this promise was made and at the time

26  Plaintiffs and Class members took the actions herein alleged, were ignorant of CHASE

28  MANHATTAN's secret intention not to perform and reasonably relied on CHASE MANHATTAN's

1  disclosures concerning how the initial interest rates on the loans would be determined, and could not, in

2  the exercise of reasonable diligence, have discovered CHASE MANHATTAN's secret intention. In

3  reliance on the promises of CHASE MANHATTAN, Plaintiffs and the Class members entered into the

4  ARM Loans. If the Plaintiffs and the Class members had known of the actual intention of CHASE

5  MANHATTAN not to perform the aforementioned promises, Plaintiffs and the Class members would

6  not have taken such action at the time these failures to disclose and suppressions of facts occurred.  At

7  the time the Plaintiffs and the Class members took the actions herein alleged, they were ignorant of the

8  existence of the facts that CHASE MANHATTAN had suppressed and failed to disclose. Had

9  Plaintiffs and the Class members been aware of the existence of the facts not disclosed by CHASE

10  MANHATTAN, Plaintiffs and the Class members would not have entered into the ARM Loans.

11      71.    As a proximate result of CHASE MANHATTAN's fraudulent conduct as herein alleged,

12  Plaintiffs and the Class members have incurred and will continue to incur damages in the amount of

13  interest they were induced to pay which was greater than they would have paid had the initial interest

14  rates been calculated in the manner that CHASE MANHATTAN had represented to Plaintiffs.

15      72.    Furthermore, Plaintiffs and the Class members are informed and believe and thereon

16  allege that at all relevant times until the present, Defendant JPMORGAN CHASE BANK and its co-

17  conspirators have been committing continuing overt acts in furtherance of the conspiracy including the

18  collection of monthly installment payments of principal and interest on the fraudulent loans made by

19  them.

20      73.    The aforementioned conduct of CHASE MANHATTAN, the predecessor of CHF LLC

21  and JPMORGAN CHASE BANK, was an intentional misrepresentation, deceit or concealment of a

22  material fact known to CHASE MANHATTAN with the intention of, on the part of CHASE

23  MANHATTAN, of thereby depriving Plaintiffs and the Class members of their property or legal rights

24  or otherwise causing injury, and was despicable conduct that subjected Plaintiffs and the Class

25  members to a cruel and unjust hardship in conscious disregard of Plaintiffs' and Class members' rights,

26  so as to justify an award of exemplary and punitive damages.

28

# FOURTH CAUSE OF ACTION FOR NEGLIGENT MISREPRESENTATION OF FACT

## (Civ. Code § § 1709, 1710(2))

### (Against All Defendants)

74.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

75.     Plaintiffs and the Class members were provided with and signed, and returned to CHASE MANHATTAN, standardized ARM Disclosures which represented to them that the initial interest rate in their corresponding promissory note evidencing the ARM Loan would be the sum of the interest rate based on a specified index and a margin to be specified in the ARM Note.

76.     The foregoing representations made by CHASE MANHATTAN through its agents were false.  In reality, the interest rates in the promissory notes were not the sum of the indexes identified in the respective disclosures plus a margin identified in the promissory notes.  Rather, they were rates set with regard to a number of factors that CHASE MANHATTAN and its agents deliberately did not disclose to Plaintiffs and the Class members, including, but not limited to:  competitor pricing for similar loan products, internal cost of funds, and customer creditworthiness.  As a result of these false representations, the initial interest rates in the respective promissory notes were higher than the rates would have been had they been calculated as represented in the disclosure statements.

77.     Defendants made the foregoing misrepresentations to Plaintiffs and Class members with no reasonable ground for believing them to be true in an effort to induce Plaintiffs and the Class members to purchase ARM Loans from Defendants, or with the expectation that Plaintiffs and Class members would so act.

78.     When CHASE MANHATTAN made these representations they knew them to be false and made these representations with the intention to deceive and defraud Plaintiffs and the Class members, and to induce Plaintiffs and Class members to act in reliance on these representations in the manner herein alleged, or with the expectation that Plaintiffs and Class members would so act.

79.     At the time CHASE MANHATTAN made its false representations and at the time Plaintiffs and the Class members took the actions alleged herein. Plaintiffs and the Class members were

1  ignorant of the falsity of CHASE MANHATTAN's representations and believed them to be true and

2  complete. In reliance upon these representations. Plaintiffs and the Class members were induced to and

3  did enter into the ARM Loans with CHASE MANHATTAN. Had Plaintiffs and the Class members

4  known the truth they would not have entered into these loans with CHASE MANHATTAN. Plaintiffs'

5  and Class members' reliance on CHASE MANHATTAN's representations were justified because the

6  fraudulent representations as to how the interest rate on their loans would be determined were made in

7  disclosures required by law and Plaintiffs and the Class members believed that CHASE

8  MANHATTAN was a trustworthy, reputable company.

9      80.    As a proximate result of CHASE MANHATTAN's fraudulent conduct as herein alleged,

10  Plaintiffs and the Class members have incurred and will continue to incur damages in the amount of

11  interest they were induced to pay which was greater than they would have paid had the initial interest

12  rates been calculated in the manner that CHASE MANHATTAN had represented.

13  **FIFTH CAUSE OF ACTION FOR RESTITUTION AND INJUNCTION FOR VIOLATION OF**

14  **THE UNFAIR COMPETITION ACT**

15  **(Bus. & Prof. Code §§ 17200 *et seq.*)**

16  **(Against All Defendants)**

17      81.    Plaintiffs allege and incorporate by reference the allegations in the preceding

18  paragraphs.

19      82.    Beginning on a date presently unknown to Plaintiffs, Defendants committed and

20  continue to commit acts of unfair competition, as defined by Bus. & Prof. Code §§ 17200 *et seq.*, by

21  engaging in the acts and practices specified in the paragraphs above.

22      83.    This Complaint is filed and these proceedings are instituted pursuant to Bus. & Prof.

23  Code §§ 17203 and 17204 to obtain restitution from these Defendants for acts, as alleged herein, that

24  violated Bus. & Prof. Code §§ 17200 *et seq.*, commonly known as the Unfair Competition Act.

25      84.    Defendants' conduct as alleged herein violated Section 17200. The acts, omissions,

26  misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted and

28  constitute a common continuous and continuing course of conduct of unfair competition by means of

1   unfair, unlawful and/or fraudulent business acts or practices within the meaning of Bus. & Prof. Code

2   §§ 17200 *et seq.* including, but not limited to, the following:

3       A.    Defendants knowingly and recklessly made material misstatements of fact or omissions

4   in violation of Section 50503(a)(2) of the California Residential Mortgage Lending Act, Fin. Code

5   §50000 *et seq.;*

6       B.    Defendants defrauded Plaintiffs in violation of Civ. Code §§1709 and 1710 while

7   engaging in the business activity of originating residential mortgage loans;

8       C.    Defendants' acts, omissions, misrepresentations, practices and non-disclosures as

9   described in the paragraphs above violate the Real Estate Settlement Procedures Act, 12 U.S.C. §2601,

10   *et seq.* and Regulation X, 24 C.F.R. §3500;

11       D.    Defendants' acts, omissions, misrepresentations, practices and non-disclosures as

12   described in the paragraphs above violate the Truth in Lending Act, 15 U.S.C.,§1601, *et seq.* and

13   Regulation Z, 12 C.F.R. § 226;

14       E.    Defendants' acts, omissions, misrepresentations, practices and non-disclosures as

15   described in the paragraphs above are unfair, unconscionable, unlawful or fraudulent;

16       F.    Defendants' acts and practices are unfair to consumers of mortgages in the State of

17   California, within the meaning of Bus. & Prof. Code §§ 17200 *et seq.*; and

18       G.    Defendants' acts and practices are fraudulent and/or deceptive within the meaning of

19   Bus. & Prof. Code §§ 17200 *et seq.*

20       85.    Plaintiffs and each of the Class members are entitled to full restitution and/or

21   disgorgement of all revenues, earnings, profits, compensation and benefits which may have been

22   obtained by Defendants as a result of such business acts or practices.

23       86.    The illegal conduct alleged herein is continuing and there is no indication that

24   Defendants will not continue such activity into the future.

25       87.    The unlawful and unfair business practices of Defendants, and each of them, as

26   described above, have injured and present a continuing threat of injury to members of the public in that

28   Defendants' conduct has caused and continues to cause Plaintiffs and Class members to pay artificially

1    inflated interest rates on ARM Loans and has made it likely that members of the public will continue to

2    be deceived with respect to the manner in which the interest rates for ARM Loans have been set.

3    Defendants should also be permanently enjoined from any continuing violations of Bus. & Prof. Code

4    §§ 17200 *et seq.*

5        88.     The conduct of Defendants as alleged in this Complaint violates Bus. & Prof. Code §§

6    17200 *et seq.*

7        89.     As alleged in this Complaint, Defendants have been unjustly enriched as a result of their

8    wrongful conduct and by Defendants' unfair competition.  Plaintiffs and Class members are

9    accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues,

10    earnings, profits, compensation and benefits which may have been obtained by Defendants as a result

11    of such business practices, pursuant to Bus. & Prof. Code §§ 17203 and 17204.

12        90.     As a direct, proximate, and foreseeable result of Defendants' fraudulent and unlawful

13    business practices, as alleged above, Plaintiffs and the Class members were required to pay

14    substantially more interest on the ARM Loans originated by Defendants than had the interest rates for

15    these loans been calculated in the manner described in the ARM Disclosures.

16        91.     Furthermore, Plaintiffs and the Class members are informed and believe and thereon

17    allege that within four years of the filing of this complaint until the present, Defendant JPMORGAN

18    CHASE BANK and its co-conspirators have been committing continuing overt acts in furtherance of

19    the conspiracy including the collection of monthly installment payments of principal and interest on the

20    fraudulent loans made by them.

21              **SIXTH CAUSE OF ACTION FOR UNJUST ENRICHMENT**

22                    **(Against All Defendants)**

23        92.     Plaintiffs allege and incorporate by reference the allegations in the preceding

24    paragraphs.

25        93.     As a result of the conduct of Defendants as alleged above, Defendants and each of them

26    have been unjustly enriched at the expense of Plaintiffs and the Class members and the law thereby

28

1    implies a contract by which Defendants must pay to Plaintiffs the amount by which, in equity and good

2    conscience, the Defendants have been unjustly enriched at the expense of Plaintiffs.

3                                         **PRAYER FOR RELIEF**

4         WHEREFORE, Plaintiffs, on behalf of themselves and the Class members, pray for judgment

5    against Defendants as set forth below:

6         1.    Determining that this action may proceed and be maintained as a class action and

7    appointing the Plaintiffs and their counsel to represent the Class members;

8         2.    For compensatory damages according to proof;

9         3.    For punitive damages to be determined at trial according to the relative culpability, net

10   worth, income and financial resources of each Defendant;

11        4.    For reasonable attorney's fees;

12        5.    For an Order adjudging and deeming Defendants to have committed acts of unfair

13   competition in violation of Bus. & Prof. Code §§ 17200 *et seq.*;

14        6.    Ordering Defendants, and each of them, their agents, servants and employees, and all

15   persons acting, directly or indirectly, in concert with them, to restore all funds to Plaintiffs and each

16   member of the Class acquired by means of any act or practice declared by this Court to be unfair,

17   unconscionable, unlawful or fraudulent, or to otherwise constitute unfair competition under Bus. &

18   Prof. Code §§ 17200 *et seq.*;

19        7.    Enjoining and restraining Defendants from continuing, maintaining or renewing each

20   and every act and practice declared to be unfair, unconscionable, unlawful or fraudulent, or to

21   otherwise constitute unfair competition under Bus. & Prof. Code §§ 17200 *et seq.*;

22   ///

23   ///

24   ///

25   ///

26   ///

28   ///

8.    For restitution and disgorgement of Defendants' ill-gotten gains;

9.    For costs of suit; and

10.    For such other and further relief as the Court may deem just and proper.

11.    Plaintiffs and the Class members hereby respectfully demand a trial by jury of all issues so triable.

Dated: October 30, 2009

Blum | Collins LLP

_____

STEVEN A. BLUM
Attorney for Plaintiffs

Dated: October 30, 2009

PETERSON LAW GROUP
PROFESSIONAL CORPORATION

_____

JOHN S. PETERSON
Attorney for Plaintiffs

1

## INDEX OF EXHIBITS

2

A       5/1 ARM Disclosure

3       B       3/1 ARM Disclosure

4       C       Fixed/Adjustable Rate Note

5       D       Fixed/Adjustable Rate Rider

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

28

# CHASE

### 5/1, 7/1 and 10/1 NON-CONVERTIBLE FIXED/ADJUSTABLE RATE LOAN DISCLOSURE (NON-CONSTRUCTION)

27601309
1276013094

The information contained in this ARM disclosure relates to:

Applicant's Name:   STEVEN L WEINSTEIN
                    BARBARA L SCHRAMM

Property Address:                                       Loan Amount:    460,000.00
    5101 CROCKETT PLACE, OAKLAND, CA 94602
LENDER:
    CHASE MANHATTAN MORTGAGE CORPORATION

THIS DISCLOSURE DESCRIBES THE FEATURES OF THE ADJUSTABLE RATE MORTGAGE ("ARM") LOAN PROGRAM OFFERED BY LENDER IN WHICH YOU HAVE EXPRESSED AN INTEREST. DISCLOSURES ON OTHER ARM PROGRAMS OFFERED BY LENDER ARE AVAILABLE UPON REQUEST.

A Consumer Handbook is also provided to you by Lender. It provides you with additional information about Adjustable Rate Mortgages.

This disclosure statement is not a contract and does not constitute a commitment on the part of Lender to make a loan to you.

I.      **INTEREST RATE**

   A. **How Your Interest Rate Is Determined**

   Your interest rate will be based on the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year (the "Index") plus an amount called a "Margin." Ask us for our current Margin and interest rate. Information about the Index is published weekly in Federal Reserve Board Statistical Release H.15 (519) and in the *Wall Street Journal*. The Index and the Margin will be specified in the promissory note (the "Note") which evidences your ARM loan. If at some point in the future this Index is no longer available, Lender will use an alternative Index which is based on information Lender believes to be comparable.
   The interest rate you will pay until the first Rate Change Date is called the "Initial Interest Rate."

   B. **How Your Interest Rate Can Change**

   Your interest rate can be adjusted up or down yearly, based on movements, if any, in your Index. The date each year on which your interest rate can be adjusted is called a "Rate Change Date". Your first Rate Change Date will occur on:

   5/1    the first day of the 61st full month after your loan closing.
   7/1    the first day of the 85th full month after your loan closing.
   10/1   the first day of the 121st full month after your loan closing.

   Subsequent Rate Change Dates will occur on the first day of every 12th calendar month thereafter.
   Approximately 45 days before each Rate Change Date, your new interest rate will be determined by adding the Margin to the then-current Index. This sum will be rounded to the nearest 1/8 of 1%.
   Your interest rate cannot increase or decrease by more than three percentage points (3.0%) on the First Rate Change Date and will not increase or decrease by more than two percentage points ( 2.0% ) at any subsequent Rate Change Date. In addition, your interest rate over the life of the loan cannot increase by more than five percentage points ( 5.0% ) over your Initial Interest Rate and cannot decrease below the margin.

   Your Initial Interest Rate may be discounted and will not be tied to the Index. It will be adjusted to the sum of the then-current Index plus the Margin at the first Rate Change Date, subject to the interest rate caps explained above. Ask us about the amount of the current interest rate discount.

II.     **PAYMENT**

   A. **How Your Monthly Payment Is Determined**

   Your payment will be based on the interest rate, loan balance, and remaining loan term. Your initial payment will be set at an amount which will fully pay the accruing monthly interest at the Initial Interest Rate and reduce the principal so as to pay off the outstanding loan balance by the end of the loan term in equal monthly installments.



**B.** **How Your Monthly Payment Can Change**

After your first Rate Change Date your monthly payment can increase or decrease substantially every twelve months based on changes in the interest rate. Your monthly payment will be changed to an amount that will fully pay the accruing monthly interest and reduce the principal so as to pay off the outstanding loan balance by the end of the loan term in equal monthly installments at the then-applicable interest rate. Your new payment amount will be due on the first monthly payment date after a Rate Change Date.

5/1 example: On a $10,000, 30-year loan with an initial interest rate of 8.5 percent in effect in July 2000, the maximum amount that the interest rate can rise under this program is 5 percentage points, to 13.5 percent, and the monthly payment can rise from $76.89 for the first five years to a maximum of $111.07 in the seventh year. To see what your payment is, divide your mortgage amount by $10,000; then multiply the monthly payment by that amount. (For example, the monthly payment for a mortgage amount of $60,000 would be: $60,000 ÷ $10,000 = 6, 6 x $76.89 = $461.34 per month.)

7/1 example: On a $10,000, 30-year loan with an initial interest rate of 8.375 percent in effect in July 2000, the maximum amount that the interest rate can rise under this program is 5 percentage points, to 13.375 percent, and the monthly payment can rise from $76.01 for the first seven years to a maximum of $108.40 in the ninth year. To see what your payment is, divide your mortgage amount by $10,000; then multiply the monthly payment by that amount. (For example, the monthly payment for a mortgage amount of $60,000 would be: $60,000 ÷ $10,000 = 6, 6 x $76.01 = $456.06 per month.)

10/1 example: On a $10,000, 30-year loan with an initial interest rate of 8.750 percent in effect in July 2000, the maximum amount that the interest rate can rise under this program is 5 percentage points, to 13.750 percent, and the monthly payment can rise from $78.67 for the first ten years to a maximum of $108.75 in the twelfth year. To see what your payment is, divide your mortgage amount by $10,000; then multiply the monthly payment by that amount. (For example, the monthly payment for a mortgage amount of $60,000 would be: $60,000 ÷ $10,000 = 6, 6 x $78.67 = $472.02 per month.)

You will be notified in writing at least 25 but not more than 120 calendar days before each payment adjustment will be made. This notice will contain information about your Index, interest rate, payment amount, loan balance, and the date on which your first payment is due at the new amount.

## APPLICANT ACKNOWLEDGEMENTS

You acknowledge that you must qualify for the proposed loan. Should you not qualify, your loan will not be approved to close.

You and Lender become bound to the terms of the Note and Security Instrument upon signing these documents. Although either party subsequently may request modification of the contract, neither party is bound to agree to such a request. Since the Note and Security Instrument establish your rights, you should understand and become familiar with the provisions of these documents.

After having read the contents of the above ARM Disclosure, you acknowledge receipt of a copy of this ARM Disclosure and further acknowledge that this ARM Disclosure was completed in full prior to its receipt. You also acknowledge receipt of the Consumer Handbook on Adjustable Rate Mortgages.

| STEVEN L WEINSTEIN | (Date) | BARBARA L SCHRAMM | (Date) |
|---|---|---|---|
| | (Date) | | (Date) |
| | (Date) | | (Date) |
| | (Date) | | (Date) |
| Lender Representative | (Date) | | |



**1/1 & 3/1 - NON-CONVERTIBLE**
**ARM DISCLOSURE**
(NON-CONSTRUCTION)

The information contained in this ARM disclosure relates to: 513      3/1 LIBOR NON CONFORMIN

Applicant's Name: **Steven L Weinstein    Barbara L Schramm**

Property Address: **5101 Crockett Place**
**Oakland, CA  94602        County: ALAMEDA**                    Loan Amount $  560,000

LENDER: Chase Manhattan Mortgage Corporation

**THIS DISCLOSURE DESCRIBES THE FEATURES OF THE ADJUSTABLE RATE MORTGAGE ("ARM") LOAN PROGRAM OFFERED BY LENDER IN WHICH YOU HAVE EXPRESSED AN INTEREST. DISCLOSURES ON OTHER ARM PROGRAMS OFFERED BY LENDER ARE AVAILABLE UPON REQUEST.**

A Consumer Handbook is also provided to you by Lender. It provides you with additional information about Adjustable Rate Mortgages.

This disclosure statement is not a contract and does not constitute a commitment on the part of Lender to make a loan to you.

**I.      INTEREST RATE**

    **A.   How Your Interest Rate Is Determined**

        Your interest rate will be based on the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR" or the "Index") plus an amount called a "Margin." Ask us for our current Margin and interest rate. Information about the Index is published in the *Wall Street Journal*. The Index and Margin will be specified in the promissory note (the "Note") which evidences your ARM loan. If at some point this Index is no longer available, the Lender will use an alternative Index which is based on information the Lender believes to be comparable. The interest rate you will pay until the first Rate Change Date is called the Initial Interest Rate.

    **B.   How Your Interest Rate Can Change**

        Your interest rate can be adjusted up or down yearly, based on movements, if any, in your Index. The date each year on which your interest rate can be adjusted is called a "Rate Change Date". Your first Rate Change Date will occur on:

        1/1      the first day of the thirteenth (13th) month after your loan closing
        3/1      the first day of the thirty-seventh (37th) month after your loan closing

Subsequent Rate Change Dates will occur on the first day of every 12th calendar month thereafter.
        Approximately 45 days before each Rate Change Date, your new interest rate will be determined by adding the Margin to the then-current Index. This sum will be rounded to the nearest 1/8 of 1%.
        Your interest rate cannot increase or decrease by more than two percentage points ( 2.0% ) at any Rate Change Date. In addition, your interest rate over the life of the loan cannot increase by more than six percentage points ( 6.0% ) over your Initial Interest Rate and cannot decrease below the margin.

        Your Initial Interest Rate may be discounted and will not be tied to the Index. It will be adjusted to the sum of the then-current Index plus the Margin at the first Rate Change Date, subject to the interest rate caps explained above. Ask us about the amount of the current interest rate discount.

**II.     PAYMENT**

    **A.   How Your Monthly Payment Is Determined**

        Your payment will be based on the interest rate, loan balance, and remaining loan term. Your initial payment will be set at an amount which will fully pay the accruing monthly interest at the Initial Interest Rate and reduce the principal so as to pay off the outstanding loan balance by the end of the loan term in equal monthly installments.

    **B.   How Your Monthly Payment Can Change**

        After your first Rate Change Date your monthly payment can increase or decrease substantially every twelve months based on changes in the interest rate. Your monthly payment will be changed to an amount that will fully pay the accruing monthly interest and reduce the principal so as to pay off the outstanding loan balance by the end of the loan term in equal monthly installments at the then-applicable interest rate. Your new payment amount will be due on the first monthly payment date after a Rate Change Date.

1/1 example: On a $10,000, 15 year loan with an initial interest rate of 6.125 percent in effect in May 2002, the maximum amount that the interest rate can rise under this program is 6 percentage points to 12.125 percent, and the monthly payment can rise from $85.06 for the first year to a maximum of $116.73 in the fourth year. To see what your payment is, divide your mortgage amount by $10,000; then multiply the monthly payment by that amount. (For example, the monthly payment for a mortgage amount of $60,000 would be: $60,000 ÷ $10,000 = 6, 6 x $85.06 = $510.36 per month.)

On a $10,000, 30-year loan with an initial interest rate of 6.125 percent in effect in May 2002, the maximum amount that the interest rate can rise under this program is 6 percentage points to 12.125 percent, and the monthly payment can rise from $60.76 for the first year to a maximum of $102.21 in the fourth year. To see what your payment is, divide your mortgage amount by $10,000; then multiply the monthly payment by that amount. (For example, the monthly payment for a mortgage amount of $60,000 would be: $60,000 ÷ $10,000 = 6, 6 x 60.76 = $364.56 per month).

3/1 example: On a $10,000, 15 year loan with an initial interest rate of 6.375 percent in effect in May 2002, the maximum amount that the interest rate can rise under this program is 6 percentage points to 12.375 percent, and the monthly payment can rise from $86.43 for the first three years to a maximum of $113.90 in the sixth year. To see what your payment is, divide your mortgage amount by $10,000; then multiply the monthly payment by that amount. (For example, the monthly payment for a mortgage amount of $60,000 would be: $60,000 ÷ $10,000 = 6, 6 x $86.43 = $518.58 per month).

On a $10,000, 30-year loan with an initial interest rate of 6.375 percent in effect in May 2002, the maximum amount that the interest rate can rise under this program is 6 percentage points to 12.375 percent, and the monthly payment can rise from $62.39 for the first three years to a maximum of $102.26 in the sixth year. To see what your payment is, divide your mortgage amount by $10,000; then multiply the monthly payment by that amount. (For example, the monthly payment for a mortgage amount of $60,000 would be: $60,000 ÷ $10,000 = 6, 6 x 62.39 = $374.34 per month).

You will be notified in writing at least 25 but not more than 120 calendar days before each payment adjustment will be made. This notice will contain information about your Index, interest rate, payment amount, loan balance, and the date on which your first payment is due at the new amount.

## APPLICANT ACKNOWLEDGEMENTS

You acknowledge that you must qualify for the proposed loan. Should you not qualify, your loan will not be approved to close.

You and Lender become bound to the terms of the Note and Security Instrument upon signing these documents. Although either party subsequently may request modification of the contract, neither party is bound to agree to such a request. Since the Note and Security Instrument establish your rights, you should understand and become familiar with the provisions of these documents.

After having read the contents of the above ARM Disclosure, you acknowledge receipt of a copy of this ARM Disclosure and further acknowledge that this ARM Disclosure was completed in full prior to its receipt. You also acknowledge receipt of the Consumer Handbook on Adjustable Rate Mortgages.

_____    MAR. 1 5 2003    _____    MAR. 1 5 2003
Steven L. Weinstein            (Date)        Barbara L. Schramm            (Date)

_____                    _____
                            (Date)                                    (Date)

_____                    _____
                            (Date)                                    (Date)

_____                    _____
                            (Date)                                    (Date)

_____    2/25/03
Lender Representative        (Date)
Larry Martinez

CMT NON-CONVERT 5/1

27601309
1276013094

# FIXED/ADJUSTABLE RATE NOTE

(One-Year Treasury Index - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| October 12, 2001 | ALAMEDA | CA |
|---|---|---|
| [Date] | [City] | [State] |

5101 CROCKETT PLACE, OAKLAND, CA 94602
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  460,000.00  (this amount is called "Principal"), plus interest, to the order of Lender. Lender is CHASE MANHATTAN MORTGAGE CORPORATION A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF NEW JERSEY

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  6.000  %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the first day of each month beginning on  December 01, 2001  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  November 01, 2031  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 200 OLD WILSON BRIDGE ROAD, WORTHINGTON, OH 43085 or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial payments will be in the amount of U.S. $  2,757.93  . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of November 2006 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - ONE-YEAR TREASURY INDEX - Single Family - Fannie Mae UNIFORM INSTRUMENT

VMP-843N (0005)
Form 3522 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 5
Initials: ____





The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and Three-Quarters percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 9.000 % or less than 3.000 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.000 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

Form 3522 1/01

Initials: _____



## 7.   BORROWER'S FAILURE TO PAY AS REQUIRED
### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   FIFTEEN  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    6.000        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A)  Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

 

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.




WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
STEVEN L WEINSTEIN                -Borrower
Social Security No.: 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

_____ (Seal)
BARBARA L SCHRAMM                -Borrower
Social Security No.: 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

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

*[Sign Original Only]*

27601309
1276013094

CMT NON-CONVERT 5/1 ARM

# FIXED/ADJUSTABLE RATE RIDER
### (One-Year Treasury Index - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this  12th day of  October, 2001 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to

CHASE MANHATTAN MORTGAGE CORPORATION

("Lender") of the same date and covering the property described in the Security Instrument and located at:

5101 CROCKETT PLACE, OAKLAND, CA 94602

[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial fixed interest rate of   6.000         %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:
## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of November 2006                  , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

MULTISTATE FIXED/ADJUSTABLE RATE RIDER - ONE-YEAR TREASURY INDEX- Single Family - Fannie Mae Uniform Instrument

-843R (0006)        Form 3182 1/01
Page 1 of 4            Initials:_____
VMP MORTGAGE FORMS - (800)521-7291

**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and Three-Quarters percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 9.000 % or less than 3.000 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 11.000 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The notice will include the amount of my monthly payment, any information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Initials: _____

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all

Initials:_____

-843R (0006)                        Page 3 of 4                        Form 3182 1/01

sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the
expiration of this period, Lender may invoke any remedies permitted by this Security Instrument
without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Fixed/Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
STEVEN L WEINSTEIN         -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
BARBARA L SCHRAMM          -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                  -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                  -Borrower


@-843R (0006)                    Page 4 of 4                     Form 3182 1/01

CM-010

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
John S. Peterson, State Bar No. 101215
PETERSON LAW GROUP PROFESSIONAL CORPORATION
707 Wilshire Boulevard, Suite 5270
Los Angeles, California 90017

TELEPHONE NO.: (213) 236-9720    FAX NO.: (213) 236-9724
ATTORNEY FOR *(Name):* Plaintiffs

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, California 90012
BRANCH NAME: Central District

CASE NAME: SCHRAMM v. JPMORGAN CHASE BANK, et al.

**FILED**
FOR COURT USE ONLY
LOS ANGELES SUPERIOR COURT
OCT 3 0 2009
JOHN A. CLARKE, CLERK
BY DAWN ALEXANDER, DEPUTY

CASE NUMBER: BC424829
JUDGE:
DEPT:

| CIVIL CASE COVER SHEET | Complex Case Designation | |
|---|---|---|
| [x] Unlimited  [ ] Limited | [ ] Counter  [ ] Joinder | |
| (Amount demanded exceeds $25,000) (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400-3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [x] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties  d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel  e. [ ] Coordination with related actions pending in one or more courts issues that will be time-consuming to resolve  in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence  f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify):*  six
5. This case [x] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: October 30, 2009

John S. Peterson, State Bar No. 101215
(TYPE OR PRINT NAME)                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach—Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case—Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late
        Claim

| SHORT TITLE: SCHRAMM v. JPMORGAN CHASE BANK, et al. | CASE NUMBER | BC424829 |
|---|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to LASC Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? [X] YES   CLASS ACTION? [X] YES   LIMITED CASE? [ ] YES   TIME ESTIMATED FOR TRIAL 5 – 9 [ ] HOURS/ [X] DAYS

**Item II.** Select the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet Form, find the main civil case cover sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Los Angeles Superior Court Local Rule 2.0.

| Applicable Reasons for Choosing Courthouse Location (See Column C below) |
|---|

1. Class Actions must be filed in the County Courthouse, Central District.
2. May be filed in Central (Other county, or no Bodily Injury/Property Damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | [ ] A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | [ ] A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** | Asbestos (04) | [ ] A6070  Asbestos Property Damage | 2. |
| | | [ ] A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | [ ] A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | [ ] A7210  Medical Malpractice - Physicians & Surgeons | 1., 2., 4. |
| | | [ ] A7240  Other Professional Health Care Malpractice | 1., 2., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | [ ] A7250  Premises Liability (e.g., slip and fall) | 1., 2., 4. |
| | | [ ] A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 2., 4. |
| | | [ ] A7270  Intentional Infliction of Emotional Distress | 1., 2., 3. |
| | | [ ] A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | [X] A6029  Other Commercial/Business Tort (not fraud/breach of contract) | (1), 2., 3. |
| | Civil Rights (08) | [ ] A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | [ ] A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | [ ] A6013  Fraud (no contract) | 1., 2., 3. |

SHORT TITLE: SCHRAMM v. JPMORGAN CHASE BANK, et al.

CASE NUMBER

| A<br>Civil Case Cover<br>Sheet Category No. | | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>- See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/ Wrongful Death Tort (Cont'd.)** Professional Negligence (25) | ☐ A6017 | Legal Malpractice | 1., 2., 3. |
| | ☐ A6050 | Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| Other (35) | ☐ A6025 | Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** Wrongful Termination (36) | ☐ A6037 | Wrongful Termination | 1., 2., 3. |
| Other Employment (15) | ☐ A6024 | Other Employment Complaint Case | 1., 2., 3. |
| | ☐ A6109 | Labor Commissioner Appeals | 10. |
| Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004 | Breach of Rental/Lease Contract (not Unlawful Detainer or wrongful eviction) | 2., 5. |
| | ☐ A6008 | Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | ☐ A6019 | Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | ☐ A6028 | Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| Collections (09) | ☐ A6002 | Collections Case-Seller Plaintiff | 2., 5., 6. |
| | ☐ A6012 | Other Promissory Note/Collections Case | 2., 5. |
| Insurance Coverage (18) | ☐ A6015 | Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract (37) | ☐ A6009 | Contractual Fraud | 1., 2., 3., 5. |
| | ☐ A6031 | Tortious Interference | 1., 2., 3., 5. |
| | ☐ A6027 | Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** Eminent Domain/Inverse Condemnation (14) | ☐ A7300 | Eminent Domain/Condemnation   Number of parcels _____ | 2. |
| Wrongful Eviction (33) | ☐ A6023 | Wrongful Eviction Case | 2., 6. |
| Other Real Property (26) | ☐ A6018 | Mortgage Foreclosure | 2., 6. |
| | ☐ A6032 | Quiet Title | 2., 6. |
| | ☐ A6060 | Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** Unlawful Detainer - Commercial (31) | ☐ A6021 | Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer - Residential (32) | ☐ A6020 | Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer - Drugs (38) | ☐ A6022 | Unlawful Detainer-Drugs | 2., 6. |
| **Judicial Review** Asset Forfeiture (05) | ☐ A6108 | Asset Forfeiture Case | 2., 6. |
| Petition re Arbitration (11) | ☐ A6115 | Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |

SHORT TITLE:  SCHRAMM v. JPMORGAN CHASE BANK, et al.    CASE NUMBER

|  | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Judicial Review (Cont'd.) | Writ of Mandate<br>(02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review<br>(39) | ☐ A6150  Other Writ / Judicial Review | 2., 8. |
| Provisionally Complex Litigation | Antitrust/Trade<br>Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction defect | 1., 2., 3. |
| | Claims Involving Mass<br>Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort<br>Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage<br>Claims from Complex<br>Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| Enforcement of Judgment | Enforcement<br>of Judgment<br>(20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| Miscellaneous Civil Complaints | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints<br>(Not Specified Above)<br>(42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| Miscellaneous Civil Petitions | Partnership Corporation<br>Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions<br>(Not Specified Above)<br>(43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

| SHORT TITLE: SCHRAMM v. JPMORGAN CHASE BANK, et al. | CASE NUMBER |
|---|---|

Item III. Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: CHECK THE NUMBER UNDER COLUMN C WHICH APPLIES IN THIS CASE ☒1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS: 1200 W - 7 TH ST 800 S. Grammy Ave |
|---|---|
| CITY: N/A | STATE: CA | ZIP CODE: 90017 | |

Item IV. *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the SUPERIOR COURT OF CALIFORNIA   courthouse in the Central   District of the Los Angeles Superior Court (Code Civ. Proc., § 392 et seq., and LASC Local Rule 2.0, subds. (b), (c) and (d)).

Dated: October 30, 2009

(SIGNATURE OF ATTORNEY/FILING PARTY)

John S. Peterson

---

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet form CM-010.

4. Complete Addendum to Civil Case Cover Sheet form LACIV 109 (Rev 01/07), LASC Approved 03-04.

5. Payment in full of the filing fee, unless fees have been waived.

6. Signed order appointing the Guardian ad Litem, JC form FL-935, if the plaintiff or petitioner is a minor under 18 years of age, or if required by Court.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.