**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-09442 JAK (FFMx) | Date | October 2, 2013 |
|---|---|---|---|
| Title | Barbara L. Schramm, et al. v. JPMorgan Chase Bank, N.A. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Andrea Keifer | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. 200)**

**I.      Introduction and Procedural Background**

Barbara Schramm ("Schramm") and Steven Weinstein ("Weinstein") (collectively, "Plaintiffs"), brought this class action against Defendants JPMorgan Chase Bank, N.A. and its subsidiary, Chase Home Finance, LLC ("Chase") (collectively, "Defendants"). Plaintiffs' claims, which are presented in their Second Amended Complaint ("SAC") (Dkt. 133), arise from certain disclosure forms and promissory notes used in connection with two home loan agreements that they entered with Defendants. Plaintiffs contend that these documents misrepresented the rates of interest that they would be charged during the respective terms of these variable rate loans. Thus, Plaintiffs assert that Defendants charged a higher interest rate than they had promised with respect to each loan.

As a result of prior rulings in this matter1, although seven causes of action were advanced in the SAC, Plaintiffs' only remaining claim, which arises from the loan agreement that they entered in 2003, is for restitution under California Business and Professions Code § 17200 (the "UCL claim"). Thus, the Court previously granted summary judgment as to Plaintiff's fraud and rescission claims. Dkt. 93, 173. The Court certified a class with respect to the UCL claim.   Dkt. 115.2

Defendants have moved for summary judgment on Plaintiff's UCL claim (the "Motion"). Dkt. 200. They argue that, under the undisputed facts as to available, market rates at the relevant times, Plaintiffs did not, as a matter of law, suffer any cognizable injury for which restitution is available. For the reasons stated in this Order, the Motion is DENIED.

---

1 These prior rulings are set forth in the following entries: Dkt. 93, 126, 156, 173 and 187.
2 Following the certification of the class, the Court determined that, because tolling was not recognized under the Ninth Circuit's interpretation of the limitations period for § 17200 claims, the claim was time barred. Dkt. 120.   Subsequently, after the California Supreme Court determined that tolling was available -- *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1190 (2013) -- the Court reinstated this claim as well as the previously-certified class. Dkt.187.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-09442 JAK (FFMx) | Date | October 2, 2013 |
|---|---|---|---|
| Title | Barbara L. Schramm, et al. v. JPMorgan Chase Bank, N.A. | | |

**II.     Factual Background**

This action arises out of two adjustable rate, home mortgage loan agreements ("ARMs") between Chase and Plaintiffs. The first agreement was entered by the parties on October 12, 2001. The parties entered a second, refinancing agreement on May 13, 2003.

Plaintiffs contend that the disclosure forms and promissory notes that Chase provided to them when issuing each of the ARMs were deceptive. Thus, they contend that these documents informed them that the "Initial Interest Rate" -- that to be charged before any adjustments were made in subsequent time periods -- would be the sum of a specified "Index" plus a set "Margin," or possibly some rate less than this sum. In support of this claim, Plaintiffs rely on language in the disclosure forms and notes discussing how the interest rate is determined. The loan disclosures state that, "Your interest rate will be based on the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year (the 'Index') plus an amount called a 'Margin.'" In a later section entitled, "How Your Interest Rate Can Change," the disclosures state that, "Your Initial Interest Rate may be discounted and will not be tied to the Index." Additional relevant language includes a sentence in the promissory notes stating that, "Beginning with the first Change Date, my adjustable interest rate will be based on an Index."

Plaintiffs allege that, notwithstanding these statements, Chase charged them an Initial Interest Rate that was higher than the sum of the governing Index and the Margin. Plaintiffs also allege that, because the increase in interest in each subsequent loan period is capped by, *i.e.,* cannot exceed, a maximum percentage increase of the rate charged during the prior period, the higher Initial Rate led to overcharges in subsequent time periods.

On April 25, 2006, Plaintiffs received a "Rate Change Notice" from Chase regarding their 2003 loan. The document contains a column of figures stating the value of the Index at the time the loan was initiated in 2003 as well as the Margin on the loan. It also states the Initial Interest Rate. The Initial Interest Rate exceeds the sum of the Index and Margin. The Rate Change Notice did not, however, include the sum of the Index and the Margin. At the time that Plaintiffs received the Notice in late April 2006, Schramm did not read the Notice at all and Weinstein did not read the Notice carefully enough to notice this claimed discrepancy. Rather, Plaintiffs contend that it was not until sometime in December 2006 that Weinstein inspected the Rate Change Notice more closely and noticed the claimed discrepancy in the Initial Interest Rate as disclosed and his understanding as to what it should have been. After this discovery, Weinstein made inquiries to Chase and requested an explanation. In April 2007 he received a letter that, according to Weinstein, stated the initial interest rate was based on "'various factors' never disclosed and which were unknown [to Plaintiffs]." Weinstein Decl., ¶ 40, Docket No. 61 (April 25, 2011).

It is undisputed that the 2003 Rate was less than the 2001 rate. Dkt. 166 ¶ 5. Chase contends that, whether or not that was a difference between the actual Initial Interest Rate printed on the Notice and the amount of a rate that Plaintiffs claim should have been charged, the rate that was provided by Chase in 2003 was the lowest rate that Plaintiffs could have obtained in the market at that time. The Motion is premised on this contention alone; it does not seek to adjudicate issues as to the alleged improprieties in connection with the disclosures as to the ARMs and the promissory notes.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-09442 JAK (FFMx) | Date | October 2, 2013 |
|---|---|---|---|
| Title | Barbara L. Schramm, et al. v. JPMorgan Chase Bank, N.A. | | |

**III.    The Parties' Contentions**

    **A.    Defendants' Position**

Defendants contend that Plaintiffs cannot prevail on their UCL claim for two reasons: (i) they lack standing to bring the UCL Claim; and (ii) their claims do not provide a basis for any of the types of relief available under §17200.

        1.    Lack of Standing

Defendants argue that § 17200 requires that Plaintiff establish both: (i) a loss or deprivation of money or property sufficient to qualify as injury in fact, *i.e.* economic injury; and (ii) that the economic injury was the result of, *i.e.,* caused by, the alleged unfair business practice.

With respect to economic injury, Defendants contend that Plaintiffs cannot meet the three-part test set forth in *Kwikset Corp. v Superior Court*, 51 Cal. 4th 310 (2011). Thus, Defendants argue that Plaintiffs have not, *inter alia,* proffered any evidence that supports the claim that, due to any alleged misrepresentation, they paid more money in interest than they would have paid absent the alleged misrepresentations. Defendants' principal, unifying contention with respect to this test is that Plaintiffs have not proffered evidence that they would have been able to obtain the loans at a rate more favorable than what Defendants charged them.   As a result of this lack of evidence, Defendants argue that Plaintiffs have not made a showing that there was an actual economic injury. Thus, Defendants argue that Plaintiffs have not presented evidence that would support the claim that Defendants' alleged improper conduct caused any harm to Plaintiffs. Stated differently, Defendants argue that, even absent the allegedly misleading language in the documents related to the interest to be charged for the ARMs, Plaintiffs would have accepted the ARMs at the rates charged because there were no better rates available from other potential lenders.

        2.    No Remedy Available Under § 17200

Defendants argue that the remedies available to Plaintiffs under § 17200 are restitution and injunctive relief. They argue that neither remedy is available under the facts presented by Plaintiffs.

With respect to restitution, Defendants argue that *Pineda v. Bank of America, N.A.,* 50 Cal. 4th 1389 (2010), establishes that the purpose of this remedy is to restore the plaintiff to the status quo ante. Defendants contend that contract damages such as benefit of the bargain or expectation damages are unavailable. Thus, restitution in this case would not permit Plaintiffs to recoup the difference between what they actually paid Defendants under ARMs, and what they can show they would have paid under the allegedly lower rates that were promised. Defendants contend that this Court determined in its previous order on Plaintiff's claim for rescission that Plaintiffs had not proffered any evidence suggesting that they did not receive the lowest loan rates available on the market. Dkt. 173 at 5-6.

With respect to injunctive relief, Defendants contend that it is only appropriate when there is a threat of continuing misconduct. The allegedly misleading language upon which Plaintiffs base their claims was revised in October 2003. As a result, Defendants argue that Plaintiff is not entitled to injunctive relief.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV09-09442 JAK (FFMx) | Date | October 2, 2013 |
|---|---|---|---|
| Title | Barbara L. Schramm, et al. v. JPMorgan Chase Bank, N.A. | | |

### B.  Plaintiffs' Position

Plaintiffs contend that they were harmed because they relied on the misleading information presented by Defendants in the disclosures related to the ARMs. They argue that, as a result of Defendants' conduct, they were left with two alternatives: pay off the loans or pay the higher rate of interest. They contend that, "to be overcharged is to be harmed."  Plaintiffs also contend that, for this reason, they have met the *Kwikset* test: Only because they were deceived, did they make the payments in the amounts that are now at issue. Thus, absent the alleged misrepresentations, they would not have voluntarily made the same amount of payments on the ARMs. They argue that the burden of showing that less expensive loans were available from another lender is inconsistent with the purposes of § 17200.

As to causation, Plaintiffs contend that the Court already ruled that summary judgment was inappropriate on the issue of Plaintiffs' reliance on Defendants' disclosures. Dkt. 93 at 12-13.   With respect to Defendants' contention that no remedies are available, Plaintiffs only address restitution. They contend that, in order to warrant this remedy, they need to establish only an ownership interest in the money that they claim to have lost. Because Plaintiffs owned the money that they paid to Defendants, they argue that they have the right to reclaim it.

## IV.   ANALYSIS

### A.   Legal Standard for Summary Judgment

A motion for summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). A party seeking summary judgment bears the initial burden of establishing the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. . . . [S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's claim. *See Celotex Corp.*, 477 U.S. at 323. If the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250; Fed. R. Civ. Proc. 56(e)(2).

Evidence presented by the parties at the summary judgment stage must be admissible. Fed. R. Civ. Proc. 56(e)(1). In reviewing the record, the court does not make credibility determinations or weigh conflicting evidence. Rather, it draws all inferences in the light most favorable to the nonmoving party. *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). Conclusory,

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-09442 JAK (FFMx) | Date | October 2, 2013 |
|---|---|---|---|
| Title | Barbara L. Schramm, et al. v. JPMorgan Chase Bank, N.A. | | |

speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. Niagara Falls*, 754 F.2d 49, 56 (2d Cir. 1985); *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

When proper grounds for granting summary judgment have not been established, partial "[s]ummary adjudication may be appropriate on clearly defined, distinct issues." *FMC Corp. v. Vendo Co.,* 196 F.Supp.2d 1023, 1029 (E.D.Cal.2002) (citing *Robi v. Five Platters, Inc.,* 918 F.2d 1439 (9th Cir.1990)).

    **B.**    **Application**

        1.   Standing Under § 17200

California Business and Professions Code § 17200 ("§ 17200") is designed to protect consumers and competitors by "promoting fair competition in commercial markets for goods and services." *Duste v. Chevron Products Co.*, 738 F. Supp. 2d 1027, 1047 (N.D. Cal. 2010). The scope of this legislation is broad. Thus, "unfair competition" includes "any unlawful, unfair or fraudulent business act or practice." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). However, a plaintiff who brings a § 17200 claim alleging unfair business practices must state "with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of Cal., Inc.*, 14 Cal. App. 4th 612, 619 (1993). Moreover, in light of the amendments to § 17200 effected by Proposition 64, in order to have standing to bring a claim under § 17200, a plaintiff must have "suffered injury in fact and has lost money or property as a result of" the alleged unfair competition." *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 852 (2008) (quoting Cal. Bus. & Prof. Code § 17204). A person has suffered such an injury in fact when that person has: (i) expended money because of the defendant's acts of unfair competition; (ii) lost money or property; or (iii) been denied money or property to which the person had a cognizable claim. *Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008, 1012 (S.D. Cal. 2009).

Defendants argue that Plaintiffs cannot show either: (i) economic injury under § 17200; or (ii) that Defendants' allegedly misleading conduct caused any injury to Plaintiffs. Defendants advance the same basis for both arguments: Because Plaintiffs cannot show that a lower interest rate than what Defendants charged them was available in the market; they cannot demonstrate any economic injury. Thus, Defendants claim that, because there is no evidence that lower rates were available from other lenders at the relevant time, Plaintiffs were not injured by the Defendants' allegedly false and misleading disclosures as to the interest rates they would charge.

As noted, Defendants rely on *Kwikset Corp.* to support their positions. *Kwikset* held that Proposition 64, which amended § 17200, "should be read in light of its apparent purposes*, i.e.,* to eliminate standing for those who have not engaged in any business dealings with would-be defendants and thereby strip such unaffected parties of the ability to file 'shakedown lawsuits,' while preserving for actual victims of deception and other acts of unfair competition the ability to sue and enjoin such practices." 51 Cal. 4th at 317.   In *Kwikset*, the defendant had labeled its products as "Made in U.S.A.," when in fact the products included foreign-made parts and were constructed, at least in part, in one or more foreign countries. *Id.* at 316. The California Supreme Court determined that, but for this labeling, Plaintiffs would not have purchased the products. *Id.* at 332.   In language that Defendants assert is determinative of the standing issue in the present case, *Kwikset* states that "[f]rom the original purchasing decision we know the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV09-09442 JAK (FFMx) | Date | October 2, 2013 |
|---|---|---|---|
| Title | Barbara L. Schramm, et al. v. JPMorgan Chase Bank, N.A. | | |

consumer valued the product as labeled more than the money he or she parted with; from the complaint's allegations we know that the consumer valued the money he or she parted with more than the product as it actually is; and from the combination we know that because of the misrepresentation the consumer (allegedly) was made to part with more money than he or she otherwise would have been willing to expend, *i.e.* that the consumer paid more than he or she actually valued the product. That increment, the extra money paid, is economic injury and affords the consumer standing to sue."  *Id.* at 330.

For purposes of the Motion, Plaintiffs have presented sufficient evidence with respect to the test set forth in *Kwikset*. Thus, Plaintiffs have proffered evidence that supports a claim of some economic loss as a result of Defendant's unfair practices. It distills to this: Plaintiffs contend that, because the interest rate charged by Defendants was higher than what was allegedly stated in the ARM documents, they paid more than they should have for the loans that they received. In other words, the ARMs did not have the value that Plaintiffs were told they would receive in the form of a more favorable interest rate. In support of this position, Plaintiffs contend that Defendants' disclosures led them to believe that the Initial Interest Rate would be the sum of an Index and a specified Margin. But, Plaintiffs contend that Defendants charged rates that were higher than this sum. This difference was economic injury within the meaning of § 17200 because it was money spent as a result of Defendants' alleged deception.

For similar reasons, the alleged deception and resulting payments also satisfy the causation prong of §17200.  "[W]hile a plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct, the plaintiff is not required to allege that those misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *In re Tobacco II Cases*, 46 Cal.4th 298, 328 (2009). In response to the Motion, Plaintiffs have presented evidence that they relied on Defendants' allegedly deceptive disclosures related to the interest rates that would be charged.   Dkt. 208-1, Weinstein Decl. at 3. Thus, Plaintiffs assert that Defendants' representations made them believe that they would be charged a certain rate of interest, when in fact they were charged a higher rate.   Dkt. 208, Opp. at 13-14; Dkt. 208-1, Weinstein Decl. at 6-8. For purposes of the Motion, this is sufficient evidence to create a triable issue as to whether these allegedly deceptive statements caused Plaintiffs to incur an economic loss: The difference between what interest they were led to believe they would pay, and what they actually paid.

*Baghdasarian v. Amazon.com, Inc.*, 258 F.R.D. 383 (C.D. Cal., 2009) is consistent with this analysis. There, Defendant Amazon.com charged its customers "shipping and handling fees" when they placed orders on "Amazon Marketplace." However, the consumers' orders were fulfilled by direct shipments to them by manufacturers or wholesalers who "took care of packaging and shipping products." *Id.* at 385. Amazon.com's customers did not know, however, that it was retaining as a "holdback," a portion of the shipping and handling fees the customers had paid. *Id.* The plaintiff brought claims under § 17200 claiming that the conduct of Amazon.com was fraudulent. Amazon argued that the plaintiffs had suffered no economic injury because there was no evidence that they could have purchased the products and had them shipped to them for less than the total amount that Amazon charged. In determining whether the plaintiff had standing to assert its § 17200 claims, the court stated:

> [g]enerally, Defendants argue that to have standing, Plaintiff needs to allege
> that he could have purchased the items for less somewhere else.
> Defendant says that Plaintiff 'obtained the best possible deal—including

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-09442 JAK (FFMx) | Date | October 2, 2013 |
|---|---|---|---|
| Title | Barbara L. Schramm, et al. v. JPMorgan Chase Bank, N.A. | | |

> shipping and handling fees—at the Amazon Marketplace for the goods he wished to purchase. He therefore did not lose money as a result of Amazon.com's alleged improper behavior' . . . Plaintiff argues that to have standing, Plaintiff needs only to allege that Plaintiff could have purchased the items for less *from Defendant*. Plaintiff argues that in this case he could have purchased the items for less from Defendant if Defendant had not charged the holdback fee.
>
> The Court agrees with Plaintiff. Plaintiff has standing to bring his UCL claim. *Id.* at 387.

Like the plaintiff in *Baghdasarian*, Plaintiffs have alleged that they could have received a better rate of interest from *Defendants.* Therefore, to have standing, Plaintiffs are not required to show that, at the relevant times, other lenders in the market offered rates more favorable to borrowers than those Defendants charged Plaintiffs. It is enough that Plaintiffs allege that they should have received a better rate from Defendants -- the one allegedly promised in the disclosures with respect to the ARMs, and in the promissory notes. Dkt. 208-1, Weinstein Decl. at 4.

Defendants' reliance on *Peterson v. Cellco Partnership*, 164 Cal.App.4th 1583 (2008) is also unpersuasive. There, plaintiffs purchased cellular telephone insurance from the defendant, who was unlicensed to sell such insurance. *Id.* at 1586. The plaintiffs claimed that they suffered injury under §17200 because the defendant was retaining a portion of each insurance premium as a fee, but was not permitted to so because it was unlicensed. *Id.* The Court of Appeal determined that plaintiffs did not have standing to bring their §17200 claim because they did not "allege they could have bought the same insurance for a lower price either directly from the insurer or from a licensed agent. Absent such an allegation, plaintiffs have not shown that they suffered actual economic injury. Rather, they received the benefit of their bargain, having obtained the bargained for insurance at the bargained for price." *Id.* at 1591. The court further concluded that the plaintiffs had not "allege[d] they were dissatisfied with the insurance or were uninformed of its price." *Id.* at 1592.

Unlike the plaintiffs in *Peterson*, Plaintiffs here have alleged that they could have received something more favorable from Defendants: The same loan, but with lower interest rates. Thus, had Defendants charged them the rate that they were allegedly promised, Plaintiffs would have paid less in interest during the period of borrowing. Because Plaintiffs have alleged that they could have paid less for the same loan from Defendants, they did not receive what was promised. They did not, to adapt the language of *Peterson,* "obtain[] the bargained for [ARM] at the bargained for price." Under these circumstances, Plaintiffs have standing to bring their UCL claim.

       2.       Remedies Under § 17200

Defendants' companion argument -- that Plaintiffs are not entitled to relief under §17200 -- is also unpersuasive. Section 17200 affords private plaintiffs two remedies: injunctive relief and restitution. *See Madrid v. Perot Systems Corp.*, 130 Cal.App.4th 440, 452 (2005) ("The UCL limits the remedies available for UCL violations to restitution and injunctive relief"); *Shersher v. Superior Court*, 154 Cal.App.4th 1491, 1495 (2007) ("Although the remedies afforded private plaintiffs under the UCL are limited to injunctive

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-09442 JAK (FFMx) | Date | October 2, 2013 |
|---|---|---|---|
| Title | Barbara L. Schramm, et al. v. JPMorgan Chase Bank, N.A. | | |

relief and restitution, the UCL's scope is broad"). To be sure, "an action under the UCL 'is not an all-purpose substitute for a tort or contract action.'" *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1150 (2003). For the reasons that follow, Plaintiffs here are seeking relief permitted under these standards and limitations.

In *Rose v. Bank of America*, 57 Cal.4th. 390 (2013), plaintiffs brought a § 17200 claim based on alleged violations of the federal Truth in Savings Act, 12 U.S.C. §§4301 *et seq*. ("TISA"). *Id.* at 393-94. Because the provision in the TISA allowing private, civil actions for damages had been repealed, the California Supreme Court considered whether such a § 17200 claim was viable. *Id.* The Court determined that state laws consistent with the TISA were not superseded. Thus, it held that "a UCL action does not 'enforce' the law on which a claim of unlawful business practice is based. 'By proscribing 'any unlawful' business practice, [Business and Professions Code] 'section 17200 'borrows' violations of other laws and treats them as unlawful practices' that the [UCL] makes *independently* actionable"  *Id.* at 396, *quoting Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Company,* 20 Cal.4th 163, 180 (1999). The California Supreme Court also concluded that, "by borrowing requirements from other statutes, the UCL does not serve as a mere enforcement mechanism. It provides its own distinct and limited equitable remedies for unlawful business practices, using other laws only to define what is 'unlawful.'" *Rose*, 57 Cal 4th at 397.

"The UCL sets out three different kinds of business acts or practices that may constitute unfair competition: the unlawful, the unfair, and the fraudulent." *Id* at 393. Plaintiffs have brought this action under the "fraudulent" prong. Thus, they claim that "[t]his case is about expressly deceptive disclosure forms that Plaintiffs signed in connection with loans that they obtained from Defendants[]."  Dkt. 208, Opp. at 5. Damages are an essential element of a *tort* claim for fraud, and may not be established as to such a claim by "benefit of the bargain evidence." *In re First Alliance Mortgage Company*, 471 F.3d 977 (9th Cir. 2006). Instead, "[t]he proper measure of damages in fraud actions under California law . . . is 'out-of-pocket' damages." *Id.* at 1001. In the present case, this means that the remedy under the claim for fraud would require a showing that the alleged misrepresentations resulted in the Plaintiffs paying more interest to Defendants than they would have paid to another lender in the marketplace. *See* Dkt. 93 at 14-15. But, consistent with the holding in *Rose* as to the remedies under § 17200 that are available for a violation of a separate statute*,* the remedies available under § 17200 for allegedly tortious conduct are not limited to those that are provided by state law as to that tort. Rather, the remedies available are those prescribed by § 17200. And, although damages are not an available remedy under § 17200, restitution is. Here, Plaintiffs contend that Defendants should be ordered to provide restitution. Thus, that they should be required to pay back to Plaintiffs the difference between the amounts that would have been paid under the interest rates Plaintiffs allegedly were led to believe would be charged, and those amounts that were actually charged. This would require "replac[ing] the money that Chase took from Plaintiffs through its deceptive business practices."  *Id.* at 18. *Id.*   Therefore, the question is whether Plaintiffs' allegations and proffered evidence support the recovery of restitution under § 17200.3

---

3  Defendants argue that the Court's prior grant of summary judgment as to Plaintiffs' fraud claims (Dkt. 93) requires the same disposition of the § 17200 claim. In its prior ruling, the Court determined that Plaintiffs' fraud claims failed because Plaintiffs could not show out of pocket damages. Dkt. 93 at 14. Thus, the Court concluded that, based on the evidence presented by the parties, no reasonable trier of fact could find that Plaintiffs would not have refinanced absent the alleged fraud, and therefore, to prove

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-09442 JAK (FFMx) | Date | October 2, 2013 |
|---|---|---|---|
| Title | Barbara L. Schramm, et al. v. JPMorgan Chase Bank, N.A. | | |

The California Supreme Court described restitution under §17200 as follows:"[w]ith regard to restitution, the goal is to restore plaintiff to the status quo ante."   *Pineda*, 50 Cal. 4th at 1401.   In *Korea Supply*, the California Supreme Court determined that, under §17200, a disgorgement remedy that is not restitutionary in nature is not available. There, the plaintiff was in the business of representing manufacturers of military equipment in transactions with the Republic of Korea. *Id.* at 1141. The plaintiff bid on a particular contract, but claimed that a competitor won it by paying bribes to officials in the Republic of Korea.   *Id.* The plaintiff sued this competitor for disgorgement of the profits that it had received as a result of improperly acquiring the contract, claiming that such amounts would otherwise have been earned by plaintiff. *Id. Korea Supply* concluded that it had found "nothing to indicate that the Legislature intended to authorize a court to order a Defendant to disgorge all profits to a plaintiff who does not have an ownership interest in those profits. *Id.* at 1147. The decision went on to conclude that "[u]nder the UCL, an individual may recover profits unfairly obtained to the extent that these profits represent monies given to the defendant or benefits in which the plaintiff has an ownership interest." *Id.* at 1148. Because the plaintiff in *Korea Supply* had not given the money to the defendant, "[a]ny award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff." *Id.* at 1149.

The present case is factually distinct from *Korea Supply*. As discussed above, Plaintiffs contend that they were deceived as to the manner in which their Initial Interest Rate was calculated. As a result, they claim that they overpaid interest to Defendants and seek to recover that overpayment. Dkt. 208, Opp. at 18. Therefore, this is a claim in which the Plaintiffs are seeking "restitutionary disgorgement." Plaintiffs' have presented evidence that Defendants promised them one rate, but ultimately charged them a different, higher rate. Because Plaintiffs paid the higher rate themselves, they are "seeking the return of money or property that was once in [their] possession." *Korea Supply*, 29 Cal. 4th at 1149.  *See SkinMedica, Inc. v. Histogen Inc.,* 869 F.Supp.2d 1176, 1184 (S.D. Cal. 2012), *quoting Feitelberg v. Credit Suisse First Boston, LLC.*, 134 Cal.App.4th 997, 1013 (2005) ("Thus, 'in the UCL context . . . restitution means the return of money to those persons from whom it was taken or who had an ownership interest in it.'").

This position is also consistent with the analysis of *In re First Alliance Mortgage Company.* There, borrowers brought a claim for fraud as well as one under § 17200 against defendant First Alliance, a lender in the subprime mortgage market. *Id.* at 984. First Alliance employees would arrange for appointments with prospective borrowers, and would give presentations that were deliberately designed to mislead them as to the amount of points, fees, the interest rate, and the true principal amount of loans. *Id.* at 985. Specifically, the loan officers allegedly would "point to the 'amount financed' and represent it as the 'loan amount,' disregarding other charges that increased the total amount borne by the borrowers." *Id.*

---

damages, "Plaintiffs must present evidence that they could have obtained a less expensive loan with an alternative lender to demonstrate out-of-pocket damages." *Id.* at 15, citing *In re First Alliance Mortgage Company*, 471 F.3d 977, 1002 (9th Cir. 2006). Although the record remains unchanged -- there is no evidence that other lenders who would have made loans at interest rates lower than those charged by Defendants -- for the reasons stated above, remedies under § 17200 based on fraud are not limited to out-of-pocket damages. Therefore, Defendants' reliance on this prior ruling is unpersuasive.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-09442 JAK (FFMx) | Date | October 2, 2013 |
|---|---|---|---|
| Title | Barbara L. Schramm, et al. v. JPMorgan Chase Bank, N.A. | | |

First Alliance would then pledge the mortgages to a secondary lender, defendant Lehman. *Id.* at 986. In its discussion of available remedies under § 17200, the Ninth Circuit stated that "[i]n the context of the UCL, 'restitution' is meant to restore the status quo by returning the plaintiff funds in which he or she has an ownership interest, and is so limited." *Id.* at 996. In considering and rejecting the § 17200 claims -- the "'ill-gotten gains' . . . Lehman unlawfully acquired . . . directly and indirectly from the Borrowers," -- the Ninth Circuit determined that the borrowers had not shown a basis for any recovery because they did not "specify the amount of these 'ill-gotten gains' to which they have an actual ownership interest." *Id.* at 997. The Court reasoned that the money in which the borrowers had a theoretical ownership interest was "the money that flowed from First Alliance to Lehman, in the form of bundled mortgage payments to repay the capital line, and to the bondholders to whom Lehman sold the mortgage-backed securities." *Id.* The court concluded that, to find the necessary ownership interest in these funds, the court would have to assume all of the money that Lehman received as a result of its relationship with First Alliance "was taken directly from the Borrowers and should not have been." *Id.* Because this conclusion could not be drawn from the borrowers' allegations, the § 17200 claim failed. *Id.*

Turning then to the plaintiff's fraud claim, *First Alliance* stated that "[t]he proper measure of damages in fraud actions under California law . . . is 'out-of-pocket' damages." *Id.* at 1001. And, the Ninth Circuit concluded that "[i]n this case, the out-of-pocket measure of the [plaintiffs'] damages meant the difference, if any, between the fees and interest rates that First Alliance charged and those another lender would have charged." *Id.* at 1002. It determined that damages had been incorrectly awarded in the trial court based on a benefit-of-the-bargain analysis -- "the difference between what they paid and what they thought they were paying" *id.* at 1002 -- and reversed on that ground. As noted above, the Ninth Circuit did not, however, apply this analysis to the plaintiffs' § 17200 claim. The logical inference from these distinct analyses is that "out-of-pocket" loss is not a required element of a § 17200 claim; if it were, there would have been no need for the separate discussion of the distinct deficiency of the § 17200 claim.

In light of these authorities, the Court concludes that "restitutionary disgorgement," which is an available remedy under §17200, may be applied in this action. Thus, if Plaintiffs can demonstrate that they were misled about the rates of interest that were to be charged, as well as the other factual elements necessary to establish their § 17200 claim, they may seek this remedy. This conclusion is consistent with the well-established purpose of § 17200: "'Through the UCL a plaintiff may obtain restitution and/or injunction relief against unfair or unlawful practices in order to protect the public and restore to the parties in interest money or property taken by means of unfair competition.'"  *Troyk v. Farmers Group, Inc.*, 171 Cal.App.4th 1305, 1339 (2009).

Defendants' contrary position is not consistent with the purposes of § 17200. As noted, the statute is designed to promote "fair competition in commercial markets for goods and services." *Duste,* 738 F. Supp. 2d at 1047. It is also well established that "unfair competition" includes "any unlawful, unfair or fraudulent business act or practice." *Cel-Tech Commc'ns, Inc.* 20 Cal. 4th at 180. The purposes of the statute would not be served if one competitor in a market were permitted to deceive consumers, attract their business and secure the resulting profits all to the potential competitive disadvantage of its more honest competitors who might otherwise have secured this and future business with these same consumers. For example, as alleged in this action, consumers who are misled by a lender as to interest rates they will be charged and, as a result elect to do business with that lender, not only provide the lender with the profits on an initial loan, but may also elect to obtain future loans or other banking services

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-09442 JAK (FFMx) | Date | October 2, 2013 |
|---|---|---|---|
| Title | Barbara L. Schramm, et al. v. JPMorgan Chase Bank, N.A. | | |

from the same lender, thereby providing it with additional profits. These profits might otherwise have gone to that lender's competitors who had not misled the consumers. To interpret § 17200 in a manner that would not address such alleged misconduct, would not be consistent with the statutory language or the caselaw interpreting it.

**V.      Conclusion**

For the foregoing reasons, the Motion is DENIED.

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Preparer | ak | |