**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | LA CV09-09442 JAK (FFMx) | Date | December 13, 2013 |
| Title | Barbara L. Schramm, et al. v. JPMorgan Chase Bank, N.A. | | |

| | |
|---|---|
| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
| Andrea Keifer | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **(IN CHAMBERS) ORDER DENYING DEFENDANTS' MOTION FOR CLASS DECERTIFICATION (DKT. 220) AND GRANTING DEFENDANTS' OBJECTION TO AND REQUEST TO EXCLUDE THE DECLARATION OF KEVIN F. HENRY (Dkt. 232)**

**I.      Introduction**

Barbara Schramm ("Schramm") and Steven Weinstein ("Weinstein") (collectively, "Plaintiffs"), brought this class action against Defendants JPMorgan Chase Bank, N.A. and its subsidiary, Chase Home Finance, LLC ("Chase") (collectively, "Defendants"). In their Second Amended Complaint ("SAC") (Dkt. 133), Plaintiffs advance claims that arise from certain disclosure forms and promissory notes used in connection with two home loan agreements that Plaintiffs entered with Defendants. Plaintiffs contend that these documents misrepresented the rates of interest that they would be charged during the respective terms of these variable rate loans. Thus, Plaintiffs allege that, over the course of each loan, Defendants charged higher interest rates than they had promised.

Through prior rulings in this matter[1], only one of the seven causes of action that were advanced in the SAC remains viable. This claim, which arises from the loan agreement that Plaintiffs entered in 2003, is for restitution under California Business and Professions Code § 17200 (the "UCL claim"). On October 19, 2011, Plaintiffs' Motion for Class Certification with respect to the UCL claim was granted. Dkt. 115.[2] Defendants now move to decertify the UCL class (the "Motion"). They contend that the recent decision of the Supreme Court in *Comcast Corp. v. Behrend*, 133 S.Ct.1426 (2013), "drastically heightened the requirements for plaintiffs seeking class certification," and that Plaintiffs cannot meet this new standard. Dkt. 221 at 5. On December 9, 2013, the Court held a hearing on the Motion, and took it under submission. For the reasons stated in this Order, the Motion is DENIED.

---

[1]  Dkt. 93, 126, 156, 173 and 187.

[2] Following the certification of the class, the Court determined that, because tolling was not recognized under the Ninth Circuit's interpretation of the limitations period for § 17200 claims, the claim was time barred. Dkt. 120. Subsequently, after the California Supreme Court determined that tolling was available -- *Aryeh v. Canon Business Solutions, Inc.*, 55 Cal. 4th 1185, 1190 (2013) -- the Court reinstated this claim as well as the previously-certified class. Dkt.187.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV09-09442 JAK (FFMx) | Date | December 13, 2013 |
|---|---|---|---|
| Title | Barbara L. Schramm, et al. v. JPMorgan Chase Bank, N.A. | | |

## II.  Factual and Procedural Background

This action arises out of two adjustable rate, home mortgage loan agreements ("ARMs") between Chase and Plaintiffs. The first agreement was entered by the parties on October 12, 2001. The parties entered a second, refinancing agreement, on May 13, 2003.

Plaintiffs contend that the disclosure forms and promissory notes that Chase provided to them in connection with each of the ARMs were deceptive. Thus, they contend that these documents informed them that the "Initial Interest Rate" -- that to be charged before any adjustments were made in subsequent time periods -- would be the sum of a specified "Index" plus a set "Margin," or possibly some rate less than this sum. In support of this claim, Plaintiffs rely on language in the disclosure forms and notes discussing how the interest rate is determined. The loan disclosure forms state that, "Your interest rate will be based on the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year (the 'Index') plus an amount called a 'Margin.'" In a later section entitled, "How Your Interest Rate Can Change," the disclosure forms state that, "Your Initial Interest Rate may be discounted and will not be tied to the Index." Additional relevant language includes a sentence in each of the promissory notes stating that, "Beginning with the first Change Date, my adjustable interest rate will be based on an Index."

Plaintiffs allege that, notwithstanding these statements, Chase charged them an Initial Interest Rate that was higher than the sum of the applicable Index and the Margin at the time they closed on each loan. Plaintiffs also allege that, because the increase in interest in each subsequent loan period was capped by, *i.e.,* could not exceed, a maximum percentage increase of the rate charged during the prior period, the higher Initial Rate led to overcharges in subsequent time periods.

On April 25, 2006, Plaintiffs received a "Rate Change Notice" from Chase regarding their 2003 loan. The document contains a column of figures stating the value of the Index at the time the loan was initiated in 2003 as well as the Margin on the loan. It also states the Initial Interest Rate. The Initial Interest Rate exceeds the sum of the Index and Margin. The Rate Change Notice did not, however, include the sum of the Index and the Margin. At the time that Plaintiffs received the Notice in late April 2006, Schramm did not read the Notice at all and Weinstein did not read the Notice carefully enough to notice this claimed discrepancy. Rather, Plaintiffs contend that it was not until December 2006 that Weinstein inspected the Rate Change Notice more closely and noticed the claimed discrepancy in the Initial Interest Rate as disclosed and his understanding as to what it should have been. After this discovery, Weinstein made inquiries of Chase and requested an explanation. In April 2007 he received a letter that, according to Weinstein, stated the initial interest rate was based on "'various factors' never disclosed and which were unknown [to Plaintiffs]." Weinstein Decl., ¶ 40, Docket No. 61 (April 25, 2011).

It is undisputed that the 2003 Rate was less than the 2001 rate. Dkt. 166 ¶ 5. Chase also contends that, whether or not there was a difference between the actual Initial Interest Rate printed on the Notice and the amount of a rate that Plaintiffs claim should have been charged, the rate that was provided by Chase in 2003 was the lowest rate that Plaintiffs could have obtained in the market at that time.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV09-09442 JAK (FFMx) | Date | December 13, 2013 |
|---|---|---|---|
| Title | Barbara L. Schramm, et al. v. JPMorgan Chase Bank, N.A. | | |

**III.     Analysis**

   **A.     Admissibility of the Opinion of Plaintiffs' Expert**

In support of their opposition to the Motion, Plaintiffs offer the testimony of an expert witness -- Kevin F. Henry ("Henry"). Dkt. 230-1. In his declaration, Henry states that "the process for calculating restitution will be uniform and mechanical." Dkt. 230-1 at 4. He further describes the method that he would use to perform these calculations: "Once the 'actual interest' [paid by a borrower] has been verified, the calculation can be re-run by substituting the 'but-for' interest rate (as defined by the index and margin) for the 'actual' interest rate charged, and the difference between the 'actual' interest paid and the 'but-for' interest due is the calculated restitution for any particular borrower." *Id.* at 5. Defendants filed an Objection to and Request to Exclude Henry's declaration Dkt. 232. Defendants contend that Henry's declaration should be excluded because Plaintiffs did not identify him as an expert prior to July 31, 2012, when the time period set by the Court for expert discovery in this action expired. Dkt. 124. Furthermore, Defendants contend that the inclusion of Henry's testimony at this late stage of litigation would be neither substantially justified nor harmless pursuant to Fed. R. Civ. P. 37(c)(1). *See* Fed. R. Civ. P. 37(c)(1) ("[i]if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless"). Plaintiffs did not file a response to these objections.

Defendants' objection to the admission of Henry's declaration is meritorious; it is sustained. This matter has been pending for more than four years. Initially, expert discovery was to have been concluded on or before May 16, 2011, but was extended to July 11, 2011. Dkt. 48. This date was subsequently extended to September 11, 2011. Dkt. 52. Following rulings on Defendants' motion for summary judgment (Dkt. 93 (Aug. 9, 2011)) and Plaintiffs' motion for class certification (Dkt. 115 (Jan. 19, 2011)), the Court set July 31, 2012 as the new date for the completion of expert discovery. Dkt. 123/124 (Nov. 28, 2011). Henry was never timely identified by Plaintiffs as an expert witness. Nor was any report prepared by Henry timely produced. Following other pre-trial proceedings, on July 29, 2013, the Court set the trial of this matter for March 25, 2014. Dkt. 197/198. Plaintiffs have not provided a sufficient explanation for their failure to comply with the aforementioned deadline for the completion of expert discovery. Nor have they explained their failure to seek any modification of the deadline after the present trial date was set. Further, Defendants will suffer prejudice if Henry's declaration is considered in connection with the Motion because they have not had the opportunity to depose him or to consider whether to proffer an opinion of a competing expert.

   **B.     Motion to Decertify the Class**

      1.     <u>Legal Standard</u>

Fed. R. Civ. P. 23(c)(1)(C) provides: "An order that grants or denies class certification may be altered or amended before final judgment." The Ninth Circuit has confirmed that "[a] district court may decertify a class at any time." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). A motion to decertify requires a showing that a class proceeding cannot meet the standards of Fed. R. Civ. P. 23. *See Marlo v. United Parcel Service, Inc.*, 639 F.3d 942, 947-48 (9th Cir. 2011), *quoting United Steel Workers*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | LA CV09-09442 JAK (FFMx) | Date | December 13, 2013 |
|---|---|---|---|
| Title | Barbara L. Schramm, et al. v. JPMorgan Chase Bank, N.A. | | |

*v. ConocoPhillips Co.,* 593 F.3d 802, 807 (9th Cir. 2010) ("Thus, as to the class-decertification issue, Marlo, as '[t]he party seeking class certification [,] bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met'") (alteration in original).

      2.     <u>Analysis</u>

As noted, Defendants contend that the Supreme Court's recent decision in *Comcast Corp. v. Behrend*, 133 S.Ct.1426 (2013), changed the landscape for determining the appropriateness of class certification under Civil Rule 23. They also contend that Plaintiffs cannot meet this heightened standard. Dkt. 221 at 5.

In *Comcast*, plaintiffs alleged that Comcast, a provider of cable television and other services to consumers, engaged in "clustering," which was defined as the practice of concentrating operations within a designated region. *Comcast*, 133 S.Ct. 1426 at 1430. The plaintiffs, who were Comcast subscribers, brought a putative class action proceeding in which they alleged antitrust violations by Comcast. As part of that action, plaintiffs claimed that Comcast's clustering activities harmed subscribers in the Philadelphia Designated Market Area ("DMA"), which included 16 counties, by eliminating competition and maintaining prices to consumers at above competitive market levels. *Id.* In support of these claims, plaintiffs proposed four theories as to antitrust harm. *Id.* at 1430-31. The district court certified a class with respect to only one of these four theories.. *Id.* at 1431.

The plaintiffs' proposed damages model compared actual cable prices in the Philadelphia DMA with hypothetical prices that would have existed but for Comcast's allegedly anticompetitive practices. *Id.* at 1431. The model, however, "assum[ed] a market that contained none of the four distortions" that the plaintiffs attributed to Comcast's actions. *Id.* at 1434. "In other words, the model assumed the validity of all four theories . . . initially advanced." *Id*. The Third Circuit declined to consider the argument that the damages model had failed to isolate damages resulting from the theory under which a class had been certified. *Id*. Rather, the Third Circuit concluded that "such an attack on the merits of the methodology had no place in the class certification inquiry," and that "it had 'not reached the stage of determining on the merits whether the methodology is a just and reasonable inference or speculative.'" *Id*. (quoting *Behrend v. Comcast Corp.*, 655 F.3d 182, 207 (3d Cir. 2011)).

The Supreme Court reversed. It held that "[u]nder [the Third Circuit's] logic, at the class-certification stage any method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be. Such a proposition would reduce Rule 23(b)(3)'s predominance requirement to a nullity." *Id*. at 1432-33. The Court stated that "[t]here is no question that the model failed to measure damages resulting from the particular antitrust injury on which petitioners' liability in this action is premised." *Id.* at 1433. The Court held that, as a result, "a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to [the class-wide] theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *Id.*

Under *Comcast,* the issue presented by the Motion is whether Plaintiffs have demonstrated that their proposed calculation of restitution is sufficiently tailored to the class-wide theory of liability that they have advanced. As noted, Plaintiffs seek restitution pursuant to Business and Professions Code § 17200. Plaintiffs contend that Defendants' "disclosure forms and mortgage notes . . . were deceptive." Dkt. 227 at

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-09442 JAK (FFMx) | Date | December 13, 2013 |
|---|---|---|---|
| Title | Barbara L. Schramm, et al. v. JPMorgan Chase Bank, N.A. | | |

9. Specifically, they contend that "the disclosure forms and notes stated that the interest rate would be the sum of a specified 'Index' plus a set 'Margin,' but Defendants actually charged them a higher Initial Interest rate that subsequently led to overcharges in subsequent time periods." *Id.* at 9. The certified class consists of those who obtained ARM loans from Defendants in California, who were charged an interest rate greater than the sum of the Index and the Margin allegedly promised in the operative disclosure forms and corresponding promissory notes. Dkt. 115 at 2.

Plaintiffs' model for restitutionary recovery conforms to the standards of *Comcast.* Thus, Plaintiffs seek restitution of the difference between the amount of interest they actually paid on their loans, and the amount of interest they claim that they were to have paid based on the terms of the operative promissory notes and disclosure statements. Dkt. 227 at 5. This model is structured to reimburse Plaintiffs based on the precise misrepresentations that form the basis for their class-wide UCL claim. This is unlike *Comcast*.[3] There, notwithstanding that only one of four antitrust injury theories was accepted by the district court in connection with class certification, the proposed damages model considered the effect of all four theories.[4]

In *Leyva v. Medline Industries, Inc.*, 716 F.3d 510 (9th Cir. 2013), the Ninth Circuit applied *Comcast* in a manner that is consistent with this conclusion. There, the putative class members were hourly employees

---

[3] Defendants cite footnote 6 in *Comcast* to support the proposition that "*even if* a model proffered by plaintiffs can properly link the damages analysis to the legal theory of liability, it *still* might be insufficient to establish the requisite commonality of damages unless it plausibly shows that the impact of the wrongful conduct was the same for all of the class members." Dkt. 221 at 11 (emphasis in original; internal quotations omitted). This argument is not persuasive. Footnote 6 states: "We might add that even if the model had identified subscribers who paid more solely because of the deterrence of overbuilding, it still would not have established the requisite commonality of damages unless it plausibly showed that the extent of overbuilding (absent deterrence) would have been the same in all counties, or that the extent is irrelevant to effect upon ability to charge supra-competitive prices." *Comcast*, 133 S.Ct. 1426 at n. 6. This language does not state that a damages model is insufficient for the purposes of class certification if individual calculations as to the amount of injury are required. Rather, it shows that, because there were 16 counties in the Philadelphia DMA, a single model that is designed to show what prices would have been absent a certain, challenged practice, would only be appropriate if the effect of the challenged practice was the same in each of the 16 counties.

[4] At the hearing on the Motion, Defendants argued that Plaintiffs' theory of liability is not tied to their model for calculating damages because, prior to signing the disclosures associated with the 2003 loan, they were told that their initial interest rate had been "locked in" at a set amount -- 3.875%. Defendants contend that this bars Plaintiffs' claim that their initial rate of interest should have been a lower amount, which was the sum of an index and margin at the time of the closing on their loan. Neither this argument, nor any supporting evidence, was presented by Defendants in their briefs filed in connection with the Motion. Further, this claim does not bear on class decertification; it goes to the merits of the pending claim for restitution. Thus, the issue for decertification is whether there is an appropriate means of calculating restitution assuming that there is a legal basis for the claim that the rate of interest charged to, and paid by, Plaintiffs was greater than what Defendants had disclosed and promised. Whether Defendants can seek to renew this new argument through an appropriate motion given the procedural posture of this action, is beyond the scope of the issues addressed in this Order.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-09442 JAK (FFMx) | Date | December 13, 2013 |
|---|---|---|---|
| Title | Barbara L. Schramm, et al. v. JPMorgan Chase Bank, N.A. | | |

in defendant Medline's distribution warehouses. They brought California Labor Code and Unfair Business Practices claims. *Id.* at 511-12. The plaintiffs sought to certify four separate sub-classes based on separate, alleged violations by Medline. The district court concluded that "common questions did not predominate over individual questions because although Plaintiff appears to have established that common questions exist with respect to Defendant's liability under state law, the damages inquiry will be highly individualized." *Id.* at 513 (internal quotations omitted). The district court explained that "[e]ach of the 500 putative class members are [sic] allegedly entitled to different damage awards for being short-changed [by defendant's policies]. Because evaluating each putative class member's claims would require fact-specific, individualized inquiries into the amount of pay to which he or she was entitled, the Court finds that individual questions predominate over common questions in this case." *Id.*

The Ninth Circuit disagreed with this analysis. It stated that "[t]he only individualized factor that the district court identified was the amount of pay owed. 'In this circuit, however, damage calculations alone cannot defeat certification.'" *Id.* at 514, *quoting Yokohama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010). It went on to conclude that "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Id.* The Ninth Circuit also recognized that, under *Comcast,* "[i]t is true that the plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Id.* at 514. The court concluded, however, that if the class members were able to prove Medline's liability, damages would be calculated based on the wages each employee lost as a result of Medline's improper practices. *Id.*

As in *Leyva*, if Plaintiffs are able to establish that Defendants' disclosure forms and mortgage notes were misleading, the calculation of the restitution owed to each Plaintiff will be based on the difference between the promised rates of interest and those actually charged. This will require a largely mechanical calculation in which there may be certain individualized elements. However, as recognized in *Leyva*, that certain individualized calculations may be necessary is insufficient to defeat class certification. This Court recognized this principle in its Order certifying the class:

> In contrast, Plaintiffs' remedy pursuant to § 17200 is restitution, which operates "to return to a person those *measurable amounts* which [were] *wrongfully taken* by means of an unfair business practice". *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 339 (1998) (italics in original). That remedy is readily amenable to class treatment because, if liability is established, each class member would be entitled to recover only the difference between the amount of interest Defendants actually collected from him or her and the amount Defendants would have collected had the initial interest rate been the sum of the governing index and margin. This calculation will be a mechanical one capable of ready determination from Defendants' records. Calculations such as this do not defeat certification because, although they are individualized in the sense that each class member may recover a different monetary amount, the process for calculating each class member's entitlement is uniform and mechanical. *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("In this circuit, however, damage calculations alone cannot defeat certification.").

Dkt. 115 at 16, n. 7.

Defendants also contend that "Plaintiffs did not provide any kind of evidence . . . establishing how this Court would calculate the appropriate amount of restitution for any class member, let alone set forth a

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV09-09442 JAK (FFMx) | Date | December 13, 2013 |
|---|---|---|---|
| Title | Barbara L. Schramm, et al. v. JPMorgan Chase Bank, N.A. | | |

plan under which the Court could determine a quantifiable recovery for every one of the class members." *Id.* at 13. As noted, Plaintiffs have identified such a model --calculating the difference between the interest rate they were charged and the rate they would have been charged had the initial interest rate been the sum of the governing index and margin. Dkt. 227 at 5. Furthermore, this Court determined, in its prior Order certifying the UCL class, that Plaintiffs have adduced evidence demonstrating that common questions predominate within the meaning of Fed. R. Civ. P. 23(b)(3). Dkt. 115 at 9. *Comcast* did not alter the evidentiary requirements for class certification under Fed. R. Civ. P. 23(b)(3).5

**IV.     Conclusion**

For all of the foregoing reasons, the Motion is DENIED.

**IT IS SO ORDERED.**

|  | : |  |
|---|---|---|
| Initials of Preparer | ak | |

---

5  Were there a determination of liability at trial, it may then be appropriate to have individualized calculations of restitution made through an administrative proceeding. *See* Fed. R. Civ. P. 53 (regarding the appointment of a special master for the purpose of addressing "post-trial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge of the district"). Courts have recognized and approved of conducting a trial on the issue of liability, and delegating computation of individual damages to a special master or magistrate judge post-trial. *See, e.g., In re Visa Check/MasterMoney Antitrust Litigation*, 280 F.3d 124, 141 (2d Cir. 2001)("[t]here are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different injuries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class"); *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Group L.P.*, 247 F.R.D. 156, n. 28 (C.D. Cal. 2007)(same); *In re Live Concert Antitrust Litigation*, 247 F.R.D. 98, 148-59 (C.D. Cal. 2007)(same).

Plaintiffs have not made any such proposal in this proceeding. Whether they may do so at this stage of the proceedings, whether a failure to have made such a request previously is the result -- as they suggested at the hearing on the Motion -- of the status of the production of information by Defendants in response to the Court's June 17, 2013 order (Dkt. 194) and whether such an administrative process would be appropriate given the issues raised by Defendants at the hearing on the Motion, *e.g.,* how calculations would be made for those class members who defaulted on their loans, are all issues that are beyond the scope of this Order.